MEMPHIS STREET RAILWAY COMPANY, Plaintiff-in-Error, v. THOMAS H. WILLIAMS, JR. and GEORGE A. WARREN, Defendant-in-Error.
—338 S. W. (2d) 639.

Western Section, Jackson.   August 31, 1959.

Rehearing Denied by Supreme Court February 5, 1960.

Certiorari Denied by Supreme Court December 11, 1959.

400

Emmett W. Braden, Elmore Holmes, III, Memphis, for plaintiff in error.

James F. Schaeffer, William R. Blount, Jr., Memphis, for defendants in error.

CARNEY, J. Upon the trial below the jury awarded the plaintiff, Thomas H. Williams, Jr., a verdict for $1,-000 for personal injuries and the plaintiff, George A. Warren, a verdict of $2,200 for personal injuries and property damages against the defendant, Memphis Street Railway Company. Judgments were entered on both verdicts by the Trial Judge and the Memphis Street Railway Company has appealed in error.

The suits arose out of a collision on January 14, 1958, at approximately 9:42 a.m. at the intersection of South Lauderdale Street and Dison Street in Memphis. Plain-

tiff Williams was a passenger in the 1952 Dodge automobile owned and operated by Plaintiff George A. Warren. Plaintiff Warren stopped his automobile very suddenly when a truck owned by Graham Transfer Company drove very suddenly across in front of him and a bus owned by Memphis Street Railway Company struck the rear of the Warren automobile resulting in the personal injuries and property damages complained of.

The question presented on this appeal is whether or not the plaintiffs, Williams and Warren, have lost their right of action against the defendant, Memphis Street Railway Company, by having made an accord and satisfaction of their right of action against the joint tortfeasor, Graham Transfer Company.

The plaintiff-in-error, Memphis Street Railway Company, insists that the plaintiffs below released and discharged the co-defendant, Graham Transfer Company. The defendants-in-error contend, as found by the Trial Judge, that they did not release and discharge the co-defendant but that they received the sums referred to in payment of covenants not to sue. The confusion and uncertainty stemmed from the fact that the plaintiffs executed their separate covenants not to sue, regular in form, and then accepted and endorsed drafts in payment therefor which contained recitations that the drafts were given in release of their claims arising out of the collision on the day mentioned above.

We copy one of the covenants not to sue as follows:

## "Covenant Not To Sue.

"Know All Men By These Presents:

"That the Undersigned, Thomas H. Williams, Jr., of Memphis, Tennessee for myself, my heirs, executors, administrators, successors and assigns, for and in consideration of the sum of Three Hundred ($300.00) Dollars to me paid, the receipt of which is hereby acknowledged, by this instrument Agree to forever refrain from instituting, procuring, or in any way aiding any suit, cause of action or claim against Jimmy Smith and J. R. Graham, d/b/a Graham Transfer Company and all persons, firms and/or corporations for whose acts or to whom said party or parties might be liable for damages, costs or expense growing out of an accident, occurring on or about the 14th day of January, 1958 at or near Memphis, Tennessee and To Save Harmless And Indemnify the parties aforesaid from all loss and/or expense resulting from any such suit, cause of action or claim; expressly reserving to the undersigned, however, all rights to proceed against any person or persons other than the parties aforesaid for all loss and/or expense arising out of said accident.

"Signed, sealed and delivered this 17th day of February, 1958.

## "Thomas H. Williams, Jr. (signed)

"Thomas H. Williams, Jr.

"State of Tennessee

"County of Shelby

"On this ——— day of February, 1958 personally appeared before me Thomas H. Williams, Jr., to me known and acknowledged that he signed the foregoing instrument for the purpose contained here.

"James F. Schaeffer (signed)
"Notary Public

"My Commission expires Jan. 24, 1960."

The drafts issued by the insurance company were payable to Thomas H. Williams, Jr. and James H. Schaeffer, his attorney, in the amount of $300 and to George A. Warren and James H. Schaeffer, his attorney, in the amount of $600.

On the face of each of these drafts appears the following typewritten words:

"In full settlement of all claims arising out of accident of 1/14/58 in Memphis, Tennessee,"

And on the reverse side of each of said drafts above the endorsements appeared the following printed notation:

"Receipt and Release

Endorsement by the payee constitutes the complete release and settlement in full satisfaction of the claim or account shown on reverse hereof."

Upon the trial, over the objection of the defendant, Memphis Street Railway Company, plaintiffs were permitted to introduce the testimony of Mr. James E. Leary,

attorney for the insurance carrier of Graham Transfer Company. Mr. Leary explained the execution of the covenants not to sue and the wording of the drafts as follows:

"Q. Tell the Court what happened between you and me. A. All right. After this accident occurred, claim was made by Mr. Schaeffer in behalf of his two clients against the insurance carrier for Graham Transfer Company. In the course of our handling of the matter, we contacted the Street Railway and determined they were not interested in contributing toward any settlement or claim. Our company wanted us to make every effort to get out of the litigation and the attendant expenses with that, and with that understanding in mind, we conferred with Mr. Schaeffer and reached a settlement, based on the covenant not to sue. At that time, it was our understanding he wanted to reserve his right against the Street Railway Company, which was part of the consideration of our being able to get out. That covenant not to sue, which your Honor has, was drawn in our office. We have these companies that we represent where we use the regular printed release forms and various forms that we have to use on these claims. We purposely did not use that type form because Mr. Schaeffer did want this to be on a covenant basis, and we agreed to have it on a covenant basis. We have several cases coincidentally involving the Street Railway Company where we have used this same covenant. While it is drawn in our office, it is one we especially prepared for a covenant not to sue, and that was the condition that we entered into this agreement on. So far as the draft itself, that is

the only draft which this particular company issues. Some companies have various colored drafts; some of them have various blocks to check on the draft as to which company in the group it is, but that is the only draft that company has, and it is used in payment of medical claims, liability claims and the like, and all of them have that same language printed on the back, even though sometimes we make several payments, like in medical payments claims, and each time the payee signs that, they are in effect signing below that same language, but we consider it in the light of the type payment it is.

"Q. You considered the payment in this case in the light of the covenant that had been entered into by both parties? A. That is correct.

"Q. Are you released; do you feel your client is released? A. We felt all claims against our client, Graham Transfer had been released by that.

"Q. Do you feel they had been released or—(interrupted)

"Mr. Braden. He answered the question, your Honor.

"The Court. Don't lead him.

"Q. Will you explain what you just said?

"Mr. Braden. He is his witness.

"The Court: Don't lead the witness, Mr. Schaeffer.

"Q. Did you intend to enter into the covenant not to sue in behalf of your company? A. Absolutely; I believe that was issued before the drafts were de-

livered to you; if not, they were done at the same time, because we have to sign the copies of the draft along with the instrument they support.

"Q. As an attorney, do you understand the difference between the effect, the execution of a covenant not to sue, and a clear release; do you understand the effect it would have on your client's position? A. I think I do; that is the reason we drew that special instrument rather than use our standard form release.

"Q. Explain to the Court what you understand is the difference in the two; it disposes of what claims? A. Specifically, under the law in this State, the release of one tort is the release of all of them, and as I stated before, part of the consideration, I understand you were letting us out on the claim, and that you would preserve your rights against the other party, and that was the intent of the covenant, not to let the Street Railway out.

"Q. So far as your client is concerned, what is your understanding in the difference in the two methods of disposing of the claim, so far as your client is concerned?

"The Court. I don't think you need to pursue that further; I think he has answered the question.

"Mr. Schaeffer. That is all."

Cross Examination

By Mr. Braden. Q. You say that draft was prepared after the covenant was signed?

"A. I think the draft was probably delivered to Mr. Schaeffer after the covenant was signed. In some cases where we know the attorney, we allow them to have both instruments in their possession, with the understanding they will return the covenant or release on the same day it is executed, because we have to send the copies of the draft into the home office the day it is dated, along with the instrument that supports it.

"Mr. Braden. That is all."

By assignment of error No. I the plaintiff-in-error, Memphis Street Railway Company, insists that the Trial Judge should have directed a verdict in their favor and erroneously held that the plaintiffs were not bound by the releases contained on the drafts signed by each of them.

By assignment of error No. II the plaintiff-in-error insists that the covenants not to sue were not admissible in evidence because they varied the terms of the written release already proven to have been signed by the plaintiffs below.

Assignment of error No. III insists that the court was in error in admitting the testimony of Attorney Leary to explain the intention of the parties in the execution of the two documents.

The plaintiff-in-error relies very strongly upon the case of Byrd v. Crowder, 166 Tenn. 215, 60 S. W. (2d) 171. In that case the instrument executed by the plaintiff was in the regular form of a covenant not to sue but contained the following additional provision:

"These presents may be pleaded as a defense to any action or proceedings which may be brought, instituted or taken by me against the said T. F. Squires and Holmes B. Squires, doing business as T. F. Squires and Sons Company, or their heirs, assigns or administrators, in breach of this covenant."

In construing the document to be a release instead of a mere covenant not to sue our Tennessee Supreme Court, in the opinion by Judge Swiggart, said as follows:

"It is obvious, therefore, that the covenant before us contains an element not consistent with the nature of a mere covenant not to sue, in the stipulation that it 'may be pleaded as a defense to any action' which may be brought against the covenantee on the cause of action treated in the covenant.

"Such a stipulation operates clearly to extinguish the cause of action which the plaintiff had against the covenantee. It expressly sets up and establishes a bar to the prosecution of any action which the plaintiff may bring in breach of her covenant, and was therefore intended as a satisfaction of such cause of action. The instrument was, therefore, in effect a release and not a mere covenant not to sue."

The distinction between the effect of a covenant not to sue and a release has always rested upon the very technical theory that a covenant not to sue did not extinguish the plaintiff's right of action against a joint tort-feasor and therefore did not operate to release the other joint tort-feasors. Smith v. Dixie Park & Amusement Co., 128 Tenn. 112, 157 S. W. 900; Nashville Interurban Railway Co. v. Gregory, 137 Tenn. 422, 193 S. W. 1053; Long v. Kirby-Smith, 40 Tenn. App. 446, 292 S. W.

(2d) 216; Wyatt v. Lassiter, 42 Tenn. App. 124, 299 S. W. (2d) 229; Horner v. Town of Cookeville, 1952, 36 Tenn. App. 535, 259 S. W. (2d) 561; Oliver v. Williams, 19 Tenn. App. 54, 83 S. W. (2d) 271.

On the other hand a release of one joint tort-feasor operates to release and discharge all the other joint tort-feasors. Brown v. Kencheloe, 43 Tenn. 192; Snyder v. Witt, 99 Tenn. 618, 42 S. W. 441; Arrowood v. McMinn County, 173 Tenn. 562, 121 S. W. (2d) 566, 119 A. L. R. 855; Byrd v. Crowder, 166 Tenn. 215, 60 S. W. (2d) 171.

This present case depends entirely on whether or not the evidence of Mr. Leary is admissible to explain the intention of the parties in the execution of the covenants not to sue and the releases contained on the drafts. If the parole evidence of Mr. Leary is not admissible then the two documents would have to be construed together and the holding of Byrd v. Crowder would prevail. We would have the situation of the plaintiffs executing a covenant not to sue and then adding at the bottom thereof a release. The fact that they were contained in separate documents would not, in our opinion, make any difference.

Hence, we now turn to the question of the admissibility of the parol testimony of Mr. Leary.

In the case of Nashville Interurban Railway Co. v. Gregory, 1916, 137 Tenn. 422, 193 S. W. 1053, 1056, it was held that parol evidence was admissible on behalf of a defendant tort-feasor to show that a covenant not to sue a joint tort-feasor was in reality a release. From the opinion of Judge Green (later Chief Justice) we quote as follows:

"The interurban company also attacks the action of the trial judge in excluding evidence which it offered, tending to show that the said covenant not to sue was, as a matter of fact, a release of plaintiff's demand against the Cumberland Telephone & Telegraph Company, and was so designed by the parties. The trial judge was of opinion that the nature of this document was defined by its own language, and that parol proof was not admissible to show its real purpose and character. This view was apparently taken by the court of civil appeals, although without any discussion.

"We think this was error.

"The rule that parol contemporaneous evidence is not admissible to alter or vary the terms of a valid written instrument has reference only to the parties to the instrument. It cannot affect third parties who, if it were otherwise, might be prejudiced by things contained in the writing contrary to the truth, through carelessness, ignorance, or fraud. A third party is not precluded from proving the truth about a document however the truth may vary from the statements contained in said document. Myers v. Taylor, 107 Tenn. 364, 64 S. W. 719; Greenleaf on Evidence, vol. 1, 279; 17 Cyc., 749; 10 R. C. L., p. 1020."

Also in the case of Horner v. Town of Cookeville, 1952, 36 Tenn. App. 535, 259 S. W. (2d) 561, 565, the above quotation from the Nashville Interurban case, supra, is given with approval. From the opinion of Judge Howell in the Horner case we quote as follows:

"It is insisted for plaintiff in error that the Court erred in permitting the defendant to question the plaintiff as to his intention in accepting payment from the defendant Melba King. Under the holding in the Gregory case this was not error as this defendant Town of Cookeville was not precluded from attempting to show the truth of the matter. We find however that the testimony of J. M. Horner does not support the conclusion that he intended to relieve the Town of Cookeville by accepting payment by Miss King."

We remember that this is not a suit between parties to the written contract but a suit between one party to the contract and a third person who relies upon the terms of the contract. We also remember that the contract was not agreed upon for the benefit of such third person, stranger to the contract.

■ Upon the authority of Nashville Interurban Railway Co. v. Gregory and Horner v. Town of Cookeville, supra, we hold that Mr. Leary's parol testimony was admissible to prove that the parties contracted only for covenants not to sue; that the consideration was paid under the covenants and that the releases were surplusage. The case of Branch v. Jarrett, 1911, 2 Tenn. Civ. App. 419, relied upon by plaintiff-in-error is not applicable to this case.

In addition, we observe that in the case of Byrd v. Crowder referred to above there was no effort made to introduce parol evidence to show that the language inconsistent with the covenant not to sue was surplusage and not intended to be effective between the parties. It

follows that the holding of Byrd v. Crowder is not controlling of the instant case.

■ While Mr. Leary's testimony indicates that he was not entirely familiar with the narrow distinction drawn by our appellate courts between the effect of a covenant not to sue and a general release of a joint tort-feasor, yet we think the evidence clearly shows that all of the parties intended to execute a covenant not to sue and that the money received by the plaintiffs was pursuant to the covenant not to sue and that the language indicating a release shown on the checks was surplusage.

Our judges have not always been too careful of their terminology in describing the thin line of demarcation between a covenant not to sue and a release or discharge of liability. From the case of Saulman v. City Council of Nashville, 1914, 131 Tenn. 427, 175 S. W. 532, 533, L. R. A. 1915E, 316, we quote as follows:

> "Originally plaintiff's suit in this cause was brought against the telephone company and the municipal defendant as joint tort-feasors, but subsequent to the origin of the suit the telephone company, by payment of a sum certain to plaintiff and taking from her a covenant not to further prosecute her suit against it, in the form approved in our recent case (Smith v. Dixie Park & Amusement Co., 128 Tenn. [1 Thomp.] 112, 157 S. W. 900), discharged its liability, and that branch of the case is not before us now."

Judge Swiggart, who wrote the opinion in Byrd v. Crowder, also wrote the opinion in Walters v. Eagle Indemnity Co., 166 Tenn. 384, 61 S. W. (2d) 666, 88 A. L. R. 654, in which he recognized that the practical effect of

a covenant not to sue was to permit the plaintiff to discharge the liability of one joint tort-feasor and yet retain his right of action against a remaining joint tort-feasor whereas he could not do so by executing a release.

Therefore, we feel constrained to hold that the assignments of error must be respectfully overruled and the judgment of the lower court affirmed at the cost of the plaintiff-in-error.

Avery, P. J. (W. S.), and Bejach, J., concur.