L. W. LONDON and LEE ROY ALLEN, Plaintiffs in Error, v. NADINE STEPP, Defendant in Error. (No. 1.)

L. W. LONDON and LEE ROY ALLEN, Plaintiffs in Error, v. CHARLES RAY JOHNSON, Administrator of the Estate of Mrs. Ella Johnson, Deceased, Defendant in Error. (No. 2.)—405 S.W. (2d) 598.

Western Section. July 26, 1965.

Certiorari Denied by Supreme Court February 7, 1966.

Lloyd S. Adams, Jr., Adams & Adams, Humboldt, for plaintiffs in error.

J. Lee Taylor, Robert T. Keeton, Huntingdon, William A. Derington, Jr., Camden, for defendant in error.

CARNEY, J. The defendants below, Lee Roy Allen, and his employer, L. W. London, have appealed in error from judgments of $27,000 in favor of the plaintiff below, Miss Nadine Stepp, and $45,000 in favor of the plaintiff below, Charles Ray Johnson, Administrator of Mrs. Ella Johnson, deceased. Regina Stepp and W. D. Williams were also defendants in the case of Charles Ray Johnson, Administrator. Judgment for $45,000 was rendered against them in the Johnson case but they have not appealed in error and are not parties in this court.

The cases below were tried three times. On the first trial there was a hung jury. On the second trial there was a verdict in favor of the defendants, L. W. London and Lee Roy Allen, and against both plaintiffs. The Trial Judge sustained motions for a new trial in behalf of the plaintiff, Nadine Stepp, and the plaintiff, Charles Ray Johnson, Administrator. He set aside the verdicts in favor of the defendants and granted plaintiffs a new trial. Upon the third trial there were jury verdicts and judgments thereon in favor of the plaintiffs described above. Defendants London and Allen preserved a wayside bill of exceptions containing the evidence heard on the second trial. They also filed a bill of exceptions containing the evidence heard on the third trial. Errors have been assigned complaining of the action of the Trial Judge in both the second and third trials.

Plaintiff Charles Ray Johnson's intestate, Mrs. Ella Johnson, aged 42, was killed and plaintiff Nadine Stepp, aged 28, severely injured on October 2, 1962, about 4:00 P.M. when the automobile in which they were riding as guest passengers being driven by Regina Stepp, aged 41, collided with a tractor-trailer truck loaded with crushed limestone being driven by defendant Lee Roy Allen, aged 40. The accident happened on U. S. Highway 70 in Benton County, Tennessee, near the Sawyers Mill Community. The tractor-trailer driven by Lee Roy Allen was traveling west. The automobile being driven by Regina Stepp was traveling east. It was raining and the highway was slippery. The defendant, W. D. Williams, aged 67, drove his automobile from a service station located on the south side of Highway 70 out in front of the automobile being driven by Regina Stepp. Regina Stepp, in an effort to avoid striking the Williams automobile directly in front of her, applied her brakes and

pulled her wheels to the left. Her automobile skidded back and forth across the highway into the westbound lane of traffic and was struck by the oncoming truck heavily loaded with crushed limestone. The highway at the point of the collision was almost level.

The tractor-trailer unit being driven by defendant Allen was 36 feet long. The trailer was 26 feet long, 7½ feet wide and was carrying 52,800 pounds of crushed limestone. The tractor-trailer empty weighed 23,800 pounds making the gross weight of the tractor-trailer and limestone 76,600 pounds. This weight was in violation of T.C.A. Section 51-1109 which provides for a maximum load limit including the weight of the truck of 61,580 pounds.

The defendant, Lee Roy Allen, saw the Regina Stepp automobile skidding back and forth across the road behind the Williams car when he was some 450 feet away. He applied the air brakes of the trailer and locked the wheels, skidded for a distance of 300 feet but was unable to stop before striking the right side of the Stepp automobile which was almost crossways of the west lane of traffic.

There were five passengers in the car with Regina Stepp. All six occupants of the automobile were employees of the Siegel plant in Bruceton, Tennessee, and were on the way home from work at the time of the accident. On the front seat were Regina Stepp, her sister Nadine Stepp, and the deceased Mrs. Ella Johnson. On the rear seat were Mrs. Dorothy Stepp, Mrs. Willodean Norwood and Mrs. Lena Chester. All the passengers were injured and Mrs. Johnson was killed.

Several lawsuits were filed as a result of the collision: Nadine Stepp, Willodean Norwood, Mrs. Lena Chester,

Dorothy Stepp and Charles Ray Johnson, Administrator, brought suit against the hostess driver, Regina Stepp, against W. D. Williams and his employer, Norman Hale, and against Lee Roy Allen and his employer, L. W. London. Later they nonsuited their hostess driver, Regina Stepp. In a separate action Regina Stepp, the hostess driver, brought suit against W. D. Williams and his employer, Norman Hale, and against Lee Roy Allen and his employer, L. W. London. The six suits were consolidated and tried together resulting in a mistrial.

Prior to the second trial Nadine Stepp, Regina Stepp, Willodean Norwood, Mrs. Lena Chester, and Mrs. Dorothy Stepp dismissed their actions as to defendants W. D. Williams and his employer, Norman Hale, leaving L. W. London and Lee Roy Allen as the only defendants in those five actions. Note, however, that W. D. Williams and Regina Stepp remained as defendants throughout the course of the proceedings in the action brought by Johnson, Administrator.

All six actions remained consolidated and were tried to a jury a second time on August 19, 20, 21 and 22, 1963. Verdicts were rendered in favor of the gravel truck driver, defendant Lee Roy Allen, and his employer, defendant L. W. London. Since they were then the only remaining defendants in the suits brought by Nadine Stepp, Willodean Norwood, Mrs. Lena Chester, and Mrs. Dorothy Stepp, their actions were dismissed. The wrongful death action by Charles Ray Johnson, Administrator, was, of course, also dismissed as to defendant London and Allen; but Regina Stepp and W. D. Williams had remained as defendants in that case, and a verdict was rendered against them for $30,000 damages.

After the second trial resulted in a verdict for the defendants, Lee Roy Allen and his employer, L. W. London, the Trial Judge granted motions for a new trial in favor of the plaintiff, Nadine Stepp, and in favor of the Administrator, Charles Ray Johnson. He left undecided and pending the motion for a new trial filed by the hostess driver, Regina Stepp, Willodean Norwood, Mrs. Lena Chester and Mrs. Dorothy Stepp. A new and third trial was had only upon the suits by plaintiffs, Nadine Stepp and Charles Ray Johnson, Administrator, resulting in judgments of $27,000 for plaintiff Nadine Stepp and $45,000 for plaintiff Charles Ray Johnson, Administrator.

Plaintiffs alleged common law and statutory negligence on the part of the defendant Allen, driver of the truck loaded with limestone, as follows:

(A) Violation of T.C.A. Section 59-852 relating to excessive speed.

(B) 59-858, reckless driving.

(C) 59-916 and 59-917 relating to defective brakes.

(D) T.C.A. Section 59-1109 relating to the weight limit on trucks over Tennessee highways.

The defendants, Lee Roy Allen and L. W. London, pleaded:

(A) Not guilty.

(B) Contributory negligence.

(C) Negligence of Regina Stepp as the sole proximate cause.

(D) Negligence of W. D. Williams as the sole proximate cause.

(E)  Combined and concurrent proximate negligence of Regina Stepp and W. D. Williams.

(F)  Accord and satisfaction in the case of Nadine Stepp averring that she had settled and released the alleged joint tort feasors, W. D. Williams, and his employer, Norman Hale, and Regina Stepp.

Following the general rule we consider first the assignments of error relating to the conduct of the second trial and the evidence contained in the wayside bill of exceptions. Thompson v. Jarrett, 44 Tenn. App. 513, 315 S.W. 2d 537.

Assignment of error No. I relating to the second trial insists that His Honor the Trial Judge erroneously refused to direct a verdict in favor of the defendants, London and Allen, at the conclusion of all of the evidence on the second trial. Assignment of error No. II insists that His Honor the Trial Judge erroneously sustained motions for a new trial by the plaintiffs, Johnson and Nadine Stepp, against the defendants, London and Allen, after the jury had returned verdicts in favor of defendants London and Allen.

We have read very carefully the four volumes totaling 800 pages containing the wayside bill of exceptions covering the second trial. We think there was ample evidence to go to the jury on the question of defendant Allen's alleged common law and statutory negligence relating to excessive speed, reckless driving and excessive weight load under the rainy conditions then existing.

The defendant Allen lived at Bradford, Tennessee, and was employed by the defendant, L. W. London, who was in the contracting business in Union City, Tennessee. He had left his home in Bradford, Tennessee, about 5:00

A.M. on the morning of the unfortunate collision, had driven to Camden, Tennessee, obtained a load of gravel, carried it to Union City; then back to Camden and back to Union City with a second load of gravel; then he had returned to Gorman, Tennessee, which is east of Waverly on U. S. Highway 70 and obtained a load of crushed limestone. He was on his way back to Union City for the third trip of the day when the accident occurred about 4:00 P.M. between Camden and Bruceton. At the time of the collision he had driven about 400 miles during the day.

Allen stated that he saw the automobile driven by the defendant, Regina Stepp, skid across the road after the Williams car pulled out in front of her; that he saw her slide back across the highway to her right side and then back to her left in the westbound lane of traffic; that he was about 450 feet away when he first saw her; that he applied his air brakes, pulled his truck to the extreme north or right margin of the road, skidded about 300 feet and had almost come to a stop before his truck collided with the right side of the Stepp automobile.

He testified that the brake pedal was broken as a result of the collision with the Stepp automobile. He is contradicted by the testimony of Lonnie Holland who lived near Camden and knew the occupants of the Stepp automobile. Holland testified that he was at the hospital were the driver, Miss Regina Stepp, was confined after the accident; that the defendant, Allen, came to the hospital and stated: "I am sorry I couldn't stop because I broke my brake." The defendant, Allen, testified that there was a governor on his tractor-trailer which limited his road speed to a maximum speed of 43 miles per hour. There were many eye witnesses to the accident because it happened in a rather congested area along U. S. High-

way 70 in the Sawyers Mill Community. Some witnesses estimated his speed much higher than 43 miles per hour. We deem it unnecessary to discuss the testimony of these various witnesses in connection with this assignment of error because we think reasonable men might draw different conclusions as to whether or not the defendant, Allen, was guilty of proximate negligence in the operation of his tractor-trailer. Assignment of error No. I is therefore respectfully overruled.

Assignment of error No. II must also be respectfully overruled because His Honor the Trial Judge is charged by law to act as the thirteenth juror. If he is dissatisfied with the verdict of the jury it is his duty to grant a new trial. Hime v. Sullivan, 1949, 188 Tenn. 605, 221 S.W.2d 893. The evidence relating to the alleged negligence of the defendant, Allen, was conflicting. His Honor the Trial Judge was dissatisfied with the jury's verdict. It was his duty to grant a new trial and we cannot hold him in error for so doing.

With reference to the third trial in which judgments were rendered against them, the defendants insist by assignments of error Nos. III and IV that His Honor the Trial Judge erroneously refused to direct verdicts in their favor at the conclusion of all the evidence because there was no material evidence to support the verdict of the jury. There was not a great deal of variation between the evidence adduced on the second trial and on the third trial. The record of the third trial totals about 900 pages.

On the second trial Allen testified that he had driven 400 miles over a period of ten hours at the time of the fatal collision and on the third trial he testified that he had driven 375 miles in eleven hours. On the third trial he testified that at no time durng the day did he go over

40 miles per hour. He was contradicted by one witness who testified that shortly before the fatal accident the defendant Allen's gravel truck passed him making more than 60 miles per hour. From our study of the record we hold there was ample evidence to go to the jury on the question of the defendant Allen's statutory and common law negligence and assignments of error Nos. III and IV are overruled.

Defendants contend that the doctrine of last clear chance or discovered peril is applicable to the case at bar; that in this case after the defendant Allen discovered that the plaintiff was in a perilous position he had no ability to avert the accident and that defendants are not liable even though their efforts to prevent injury to the plaintiffs were defeated by their antecedent lack of preparation or previous course of negligent conduct such as excessive speed, etc. They cite in support of this contention Hemmer v. Tennessee Electric Power Co., 24 Tenn. App. 42, 139 S.W.2d 698, 703; Todd v. Cincinnati, N. O. & T. P. Railroad Co., 135 Tenn. 92, 185 S.W. 62, L.R.A. 1916E, 555; Tennessee Central Railway v. Ledbetter, 159 Tenn. 404, 19 S.W.2d 258; and Restatement of Torts, Section 479. The doctrine of the last clear chance or discovered peril is not applicable to the case at bar because such doctrines apply to cases in which the plaintiff is placed in a position of peril by his or her own negligence. Prosser on Torts, Hornbook Series, 1941 Edition, page 408. In the case at bar there is no proof that the plaintiff, Nadine Stepp, nor the plaintiff's intestate, Mrs. Ella Johnson, were placed in a position of peril by their own negligent conduct. On the contrary it is alleged that their position of peril was a result of the concurring negligence of the defendant, Regina Stepp, D. M. Williams and Lee

Roy Allen. Therefore, the legal authorities cited by the defendants, Allen and London, have no application to this appeal.

Assignment of error No. V insists that the Trial Court erred in refusing to sustain a demurrer of the defendants, London and Allen, going to that portion of the statutory counts of the declaration charging a violation of T.C.A. Section 59-1109. This section provides for the size, weight and load of motor vehicles on the state highways.

Assignment of error No. XIV is directed at the action of the Trial Court in instructing the jury in substance that it was negligence per se for the defendant, Lee Roy Allen, to drive his gravel truck upon the highway with a load of limestone rock in excess of the 61,580 pounds provided by Section 59-1109 and that if such negligence was a direct and proximate cause of injury to the plaintiffs, Stepp and Johnson, then the defendants, Allen and London, would be liable under Count 2 of the plaintiffs' respective declarations. It was admitted by the defendants that the total load including the tractor and trailer was some 76,000 pounds or about seven tons in excess of the limit provided by 59-1109.

It is the insistence of the defendants, Allen and London, that T.C.A. Sections 59-1101 et seq. including 59-1109 were not enacted as safety statutes for the benefit of the public as individuals but solely for the benefit of the state to aid performance of its duty to maintain the highways of Tennessee in a reasonably safe condition for motorists to drive upon and that therefore it is not negligence per se to violate such statutes. They cite our Tennessee Cases of Hoover Motor Express Co. v. Fort, 167 Tenn. 628, 72 S.W.2d 1052; Carter v. Redmond, 142 Tenn. 258, 218 S.W. 217; Borden v. Daniel, 48 Tenn.App.

314, 346 S.W.2d 283; and Vinson v. Fentress, 33 Tenn. App. 359, 232 S.W.2d 272. These cases very clearly enunciate the rule that one who is not a beneficiary of a statute or an ordinance may base neither an action nor a defense on a violation thereof.

Title 59 of Tennessee Code Annotated is entitled "Motor and Other Vehicles." Chapter 11 of Title 59 is entitled "Size, Weight and Load." T.C.A. Section 59-1109 is included in Chapter 11. In our opinion 59-1109 was enacted as a safety measure to protect not only the State of Tennessee as a sovereign but motorists and their passengers traveling over the highways of the State of Tennessee meeting and passing such vehicles covered by T.C.A. Section 59-1109. Hence, these two assignments of error V and XIV are respectfully overruled.

Assignment of error No. VI complains of the action of the Trial Judge in permitting plaintiffs' witness, J. W. Nunnery, over the objection of the defendants, London and Allen, to testify that he knew how fast a tractor-trailer such as that driven by defendant Allen would run. Mr. Nunnery testified that when trucks such as the one involved in this accident have governors they are usually set at 70 miles per hour and without the governor such trucks would run 80 or 90 miles per hour. We think His Honor the Trial Judge was in error in permitting the witness Nunnery to testify that when the trucks have governors they are usually set at 70 miles per hour absent any showing of affirmative knowledge by Mr. Nunnery concerning the operation of trucks by Mr. London or Mr. Allen. We think his general testimony that a truck of the make and type involved in the collision in this case would run 80 or 90 miles per hour was within the bounds of discretion to be allowed by His Honor the

Trial Judge. We are unable to see that his testimony that such trucks when they have governors are usually set at 70 miles per hour affected the verdict of the jury and therefore we classify it as harmless error, T.C.A. section 27-117.

Assignment of error No. VII complains of the action of the Trial Court in permitting the witness, J. W. Nunnery, over objection of the defendants, to testify outside the presence of the jury, that he had worked on the same construction jobs with the defendant, Lee Roy Allen, before the accident and that when he, Nunnery, was driving his truck at the rate of 50 miles per hour as instructed by their employer the defendant Allen would often pass him in the other truck going 60 or maybe 70 miles per hour. This testimony was taken by the court reporter and on the next day read to the jury as rebuttal proof in behalf of the plaintiff, Nadine Stepp.

Mr. Nunnery was an eye witness to the collision having been seated in his truck on the scales of the Hardy Sand Company in the immediate vicinity of the collision on Highway 70 and having been looking in his rear view mirror at the time of the collision. At the time of the third trial it was necessary for him to return to the State of Alabama because of an illness in his family. The Trial Court permitted him to testify as a witness for the plaintiff, Nadine Stepp, and in addition permitted counsel for Mrs. Nadine Stepp to place in the record of his testimony regarding the speed of the defendant, Lee Roy Allen. This testimony was read on the following day to the jury as rebuttal evidence after Mr. Nunnery had left the trial for Alabama. At the time this evidence was written into the record out of the presence of the jury attorney for defendants was informed that it probably

would be offered as rebuttal evidence. Therefore, he did have the right of cross examination. He did not exercise his right but elected to stand on his objections. The reading of the testimony was analogous to reading a deposition. This evidence at the very most was merely cumulative to other evidence which the plaintiffs offered to prove that the speed of the defendant Allen was more than 40 miles per hour as testified by him. We think the evidence was competent but if not, then at the most it was harmless error, T.C.A. Section 27-117, and therefore His Honor the Trial Judge will not be put in error for admitting such evidence.

Assignments of error VIII, IX and X complain of the refusal of the Trial Judge to permit attorneys for defendants, London and Allen, to interrogate the plaintiff, Miss Nadine Stepp, concerning her alleged settlement with the defendants, Regina Stepp, W. D. Williams, and his employer, Norman Hale. Defendants had filed a plea of accord and satisfaction averring that she had in effect released them for her damages.

The following colloquy took place between the Trial Court and Mr. Adams, attorney for the defendants:

"Q. (By Mr. Adams) This is out of the presence of the Jury, now. Miss Nadine, you testified that you originally brought this suit against Miss Regina Stepp and W. D. Williams and his employer, Norman Hale, as well as some others. That is true, is it not?

A. Yes, sir.

Q. And, have you since settled with Miss Regina Stepp, as far as this—

MR. TAYLOR: If Your Honor please, I except to that.

THE COURT: I sustain that exception. She is no match for counsel on using the word, settled. She doesn't know anything about those things and she didn't do these things herself.

MR. TAYLOR: That's right.

THE COURT: Now, if you want to put her counsel on and ask him about it.

MR. ADAMS: Well, if the Court please, our position is—

THE COURT: Your position is to ask questions that you know. This girl is injured, her mind is injured and you ask questions that might affect her in this lawsuit, which may not be the truth. She isn't in a position to say. Now, you want to ask her if she knows what happened or if her lawyer knows, all right, but you are using terms you know that wouldn't be fair to ask her those questions. She doesn't know and she wouldn't know the difference between settled or covenant not to sue or any of those things.

Q. (By Mr. Adams) Miss Nadine, did you receive a sum of money from Miss Regina Stepp?

MR. TAYLOR: I except, Your Honor.

THE COURT: I sustain that objection.

Q. (By Mr. Adams) If you received any money, was that in satisfaction—

MR. TAYLOR: I except to that, if Your Honor please.

THE COURT: I sustain that.

MR. TAYLOR: Don't answer anything until I—

MR. ADAMS: If we—

THE COURT: No, you can't put that in the record. If you want the truth, instead of getting some trick into the record, but I am not going to let you put a trick in it. If you want the real truth about it, then, put the lawyers on and find out about it. Now, I am not going to let this lawsuit take that kind of slant, if it is a trick. Now, this child doesn't know anything about that. They haven't asked her anything about that.

MR. ADAMS: No, sir. I understand that, but we have a plea of accord and satisfaction.

THE COURT: Now, if you want to go into that, you know how to do it. You know it isn't fair to ask that girl. Why don't you put the counsel on and find out the truth in the matter?

MR. ADAMS: Because, if the Court please,—

THE COURT: Because you don't want the truth; is that it?

MR. ADAMS: No, Your Honor.

THE COURT: I am not going to let you put it in the record, now, because it is not right, and because she doesn't know how to answer it and she doesn't know anything about it, but I am going to offer you full information from Counsel or anybody else that can tell you the truth about it.

MR. ADAMS: No, sir. We think we are entitled to inquire of the party. We note our exception.

THE COURT: Note your exception.

Now, I am not going to permit that kind of thing to happen. This lawsuit is not going out on a trick. It is going out on the facts and nothing else but the facts and the truth. Perhaps if I had had my way about it, there wouldn't have been anything but a lawsuit all the way through. This time, there wouldn't have been any covenants not to sue or anything else, because we wouldn't have this to contend with, but this is not—of course the Court had nothing to do with that, but I do have the right to see that a fair trial is had here.

Now, if there is anything else, or if you want—I am going to say this, if you want the facts about this thing, counsel and the documents themselves will be presented to you and you can put them in the record, if you want to.

Is there anything else?

MR. ADAMS: No."

Plaintiff Nadine Stepp had joined issue on the plea of accord and satisfaction and further stated, "For further replication Nadine Stepp has executed no instruments incidental to said case except covenants not to sue, hereto the court shown." On the same day she filed a covenant not to sue in writing dated January 22, 1963, and signed by Mrs. Dorothy Stepp, Wendell Stepp, Mrs. Lena R. Chester, Floyd Chester, Mrs. Willodean Norwood, V. D. Norwood, and Nadine Stepp. In the writing they agreed to dismiss and not further prosecute any suit against Regina Stepp and expressly reserved all rights to recover damages against W. D. Williams, L. W. London, Lee Roy Allen and Norman Hale arising out of the automobile collision on October 5, 1962. She also filed a covenant not to sue signed by the same parties in

favor of W. D. Williams and Norman Hale but expressly reserving their rights of action for damages against Lee Roy Allen and L. W. London.

Upon the third trial after the court refused to permit Mr. Adams to cross-examine the plaintiff, Miss Nadine Stepp, concerning her alleged "settlement" of claims against Regina Stepp, W. D. Williams and Norman Hale, Mr. J. Lee Taylor, her attorney, offered himself as a witness in open court in the absence of the jury. He referred to the documents which had already been filed in the wayside bill of exceptions. Attorney for defendants Allen and London did not cross-examine Mr. Taylor concerning the contents of the written agreements. No evidence was offered by defendants London and Allen in support of their pleas of accord and satisfaction.

In the case of Winters v. Floyd, 1963, 51 Tenn.App. 298, 367 S.W.2d 288, 4 A.L.R.3d 450, relied upon by defendants Allen and London, the Middle Section of this Court held that a plaintiff had the constitutional right to have all issues of fact tried at the same time by the same jury and that it was error for the Trial Court to order a separate trial to determine the issues involved on a special plea of accord and satisfaction based upon a release executed by the plaintiffs. The plaintiffs had made replication averring fraud, mistake, and illiteracy. We fail to see that the Winters case is at all controlling of the question at bar.

The language of the covenants not to sue executed by plaintiff Miss Nadine Stepp was clear and unambiguous and expressly reserved the right of action against the defendants London and Allen. While it is true under the authority of Nashville Interurban Railway

Co. v. Gregory, 137 Tenn. 422, 193 S.W. 1053, and Horner v. Town of Cookeville, 36 Tenn. App. 535, 259 S.W.2d 561, the defendants London and Allen were not bound by the language contained in the covenants not to sue, yet the burden of proof was upon them to support their pleas of accord and satisfaction by competent and credible evidence.

■ The defendants offered no proof of any kind tending to impeach or dispute the clear unambiguous provisions of the covenants not to sue executed by Miss Nadine Stepp. Having failed even to cross-examine the attorney for Miss Stepp who negotiated the contract between Miss Nadine Stepp and the other alleged joint tort feasors there is nothing in the record before this court upon which we could hold the Trial Judge in error for refusing to permit defendants to engage in a "fishing expedition" by cross-examination of Miss Nadine Stepp regarding the covenant not to sue which she had executed. We make reference to the case of Memphis Street Railway v. Williams, 1959, 47 Tenn.App. 399, 338 S.W.2d 639, in which we reviewed most of the Tennessee cases relating to covenants not to sue. Assignments of error VIII, IX and X are therefore respectfully overruled.

■ Assignment of error No. XIII complains of a portion of the charge of the Trial Judge to the effect that if the jury found that the defendant, Lee Roy Allen, loaded his truck with limestone to the total weight of 76,800 pounds and 15,000 pounds in excess of the maximum weight permitted by law and that he drove the tractor-trailer at a fast and excessive rate of speed and without brakes adequate to keep the tractor-trailer under reasonable control under the circumstances and conditions then existing and that if they found he did some-

thing an ordinary prudent person would not have done or in doing so he omitted doing something an ordinary prudent person would have done under the circumstances then he, Lee Roy Allen, would be guilty of negligence. When we remember that the evidence showed that it was raining and the highway was slick and the defendant, Lee Roy Allen, admitted that he saw the Stepp automobile when he was more than 400 feet away and was unable to stop before hitting it, we hold that portion of the Trial Judge's charge complained of is not error. See comments in connection with assignments of error V and XIV.

Assignment of error No. XVIII insists that the Trial Judge erred in failing to give special request No. 4 which was to the effect that it was not negligence as a matter of law merely to load a truck in excess of the maximum weight load provided by statute. We think this was not a correct statement of the law and the Trial Judge properly refused to charge it. See discussion relating to assignment of error No. V.

Assignment of error No. XVII complains of the refusal of the Trial Judge to give in charge special request No. 3 which is as follows:

"I further charge you, at the request of defendants London and Allen, as follows:

"It is proper for me to note and point out to you a matter recognized by the courts of Tennessee: distances, when taken in connection with moving vehicles, take on a different significance than they appear to have when considered in the abstract."

It is harmless error at most for His Honor the Trial Judge to refuse this special request and therefore, assign-

ment of error No. XVII is overruled. T.C.A. Section 27-117.

Assignments of error XIX and XX complain of the action of the Trial Judge in insisting upon the jury trying its best to reach a verdict in each of the cases after the foreman of the jury reported that a decision appeared hopeless. The Trial Judge did exhort the jury to try to come to a verdict saying that the issues were simple and that the cases had been tried three times with considerable expense and trouble. We find nothing in his words to indicate an attempt by the Court to obtain a verdict for or against any particular party but only a desire to avoid a mistrial. The Trial Judge has a discretion when the jury reports that it is deadlocked either to declare a mistrial or to send the jury back for further deliberations. We see no abuse of this discretion and assignments of error XIX and XX are overruled.

Assignments of error XI and XII assail the action of the Trial Judge in subjecting the witness of defendants, Norman Thornton, to a very grueling examination. Mr. Thornton, an automobile dealer of Dyer, Tennessee, had sold the GMC tractor involved in the collision in this case to the defendant London. He had testified that the tractor had a gross carrying capacity of 76,800 pounds and that it had a governor which would allow a maximum speed of 52.6 miles per hour at 2100 RPM's in the fifth or highest gear forward. Upon cross-examination it developed that Mr. Thornton was reading from information furnished by General Motors relating to the capacity of the particular truck and admitted that he had never driven the truck involved in the collision. The Trial Judge commented upon the fact that the witness was reading and did not know anything of his own

knowledge about the particular truck. From the record we quote a portion of this colloquy:

"THE COURT: Now, get up here. I am going to let you swear something. I want you to state to this Jury whether you know what this truck will make or won't make and we will have it tested and see whether you know the truth or not.

THE WITNESS: If the truck—

THE COURT: Now, you state, under oath, whether you know what this truck will make.

THE WITNESS: The truck will not exceed 65 miles an hour under any conditions.

THE COURT. I didn't ask you that question. I am going to fine you, if you don't listen to me. Now, I'll do it.

I am asking you, if you know, of your own knowledge, how fast this truck will go, and you say, yes, or no, to that question.

THE WITNESS: I couldn't answer satisfactorily.

THE COURT: All right. Don't say what it will, if you can't answer. You are trying to go on what somebody has told you and that book or something else, as to what that truck will do.

THE WITNESS: Well, that is what the manufacturer says.

THE COURT: I don't care what they say. This is not you. You are testifying. You are testifying about, not what you know, but what you read. The Jury can read. Anybody can read that.

Now, you can testify that that is what they make it as; that is competent, but what he knows, is not the truth.''

Attorneys for defendants moved for a mistrial which was denied. We think His Honor the Trial Judge used intemperate language in correcting the witness Thornton. He should have admonished him in more moderate terms that he should testify only from his own knowledge or in the alternative should explain fully to the jury that he was not testifying from his own knowledge concerning the speed and weight capacity of the truck involved in this collision. Assignments of error Nos. XI and XII are sustained.

Assignment of error No. XV complains of the refusal of the Trial Judge to charge the jury on the doctrine of sudden emergency. The doctrine was well expressed by Chief Justice Burnett in McClard v. Reid, 1950, 190 Tenn. 337, 345, 229 S.W.2d 505, 508 as follows:

"Where one is confronted with a sudden emergency without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly if he exercised such care as an ordinary prudent person would exercise when confronted by a like emergency, he is not liable for an injury which has resulted from his conduct, even though another course of conduct would have been more judicious or safer or might even have avoided the injury, as under such circumstances the injury is regarded as an inevitable accident, provided that the defendant is not guilty of some act of negli-

gence which caused the emergency or places him in a position of an emeregency."

There was evidence from which the jury could reasonably have found that the defendant, Lee Roy Allen, was confronted with a sudden emergency when the car driven by Miss Regina Stepp skidded across the road in the westbound traffic lane and His Honor the Trial Judge was in error in refusing to give a charge on sudden emergency. Therefore, assignment of error No. XV is sustained.

Assignment of error No. XVI complains of the refusal of the Trial Judge to give special request No. 2 relating to sudden emergency. While the requested charge is substantially correct we think it is somewhat confusing because it starts out with this statement: "What is known as the law of sudden emergency applies in this case * * *." While the requested charge does go further and explain that the jury must find that a sudden emergency existed at the time of or just prior to the unfortunate accident, we think the Trial Judge should not be put in error for refusing to give this requested charge. Accordingly, assignment of error No. XVI is overruled.

We are very reluctant to reverse these two cases because they have been tried three times but it is our considered opinion that the refusal of the Trial Court to charge the defendants' theory of sudden emergency together with the other assignments which have been sustained constitute prejudicial error and the judgments of the lower Court must be reversed and the causes remanded for a new trial.

Since the cases are remanded for a new trial we deem it unnecessary to consider assignments of error Nos.

XXI and XXII relating to alleged excessiveness of the verdicts.

The costs of this appeal in error will be taxed against the plaintiffs below. The costs in the Trial Court will abide the new trial.

Avery. P.J. (W.S.), and Bejach, J., concur.