Willie SMITH, Appellee,

v.

Marley CRAIG, Appellant.

Beulah SMITH, Appellee,

v.

Marley CRAIG, Appellant.

Court of Appeals of Tennessee,
Western Section.

Feb. 7, 1972.

Certiorari Denied by Supreme Court
Aug. 7, 1972.

W. H. Lassiter, Maddox, Lassiter & Jones, Huntingdon, for appellant.

Frank L. Hollis, Peeler & Hollis, Camden, for appellees.

MATHERNE, Judge.

These are companion cases, consolidated for trial and on appeal, wherein the plaintiff Beulah Smith recovered a verdict and judgment of $7,000.00 for personal injuries received as result of having been run into by the defendant motorist as the plaintiff was attempting to walk across Highway 69 in Benton County, Tennessee; and, her husband, the plaintiff Willie Smith, recovered $3,000.00 for medical expenses and loss of services of his wife as result the injuries sustained by her.

The defendant motorist Marley Craig by two assignments of error insists that a verdict should have been directed in his favor due to the contributory negligence of the plaintiff; and, the Trial Judge erred in charging the doctrine of last clear chance. Two other assignments complain of two other charges given the jury by the Trial Judge.

The plaintiff Beulah Smith testified that on the day of the injury she rode home from work with a fellow worker, Gene Cagle. Mrs. Smith stated Mr. Cagle drove into the driveway of her home, let Mrs. Smith out of the automobile, backed his vehicle into Highway 69 and drove toward Holliday, the direction from which he had come. Mrs. Smith stated she thereupon walked from her position on the side of the driveway of her home to the edge of the blacktop of Highway 69; she stopped and looked to her left and saw two boys some distance away; she looked to her right and saw only the Cagle automobile traveling away from her and nearing the crest of a hill which was about 145 yards distance from her. This plaintiff stated she did not see the vehicle of the defendant Craig approaching from her right; she thereupon proceeded to cross Highway 69 toward her mailbox located on the opposite side of the highway. Mrs. Smith stated she did not again look to the right, or to the left, but proceeded to walk at a normal gait across the highway. When she was within three or four feet of the far side of the blacktop, she heard brakes being applied, and for the first time became aware of the defendant's vehicle about 40 feet to her right and approaching her. This plaintiff stated the approaching vehicle struck her and caused rather serious injuries.

The plaintiff stated she could tell by the manner in which her leg was injured that the front of the defendant's vehicle struck her.

The defendant Marley Craig testified that when he came over the hill he observed a car stopped on the highway in the area of the plaintiff's home and saw a woman getting out of the car, go around the back of the parked car, and proceed to walk out into the highway. The defendant testified:

"Q. Relate to the Court and jury, Mr. Craig, what took place?

A. As I topped the hill, she was getting out of the car, and walked right around the car and walked right straight across the road there in the side of my car. Never looked neither way.

Q. When did you first realize that she was going to continue on? In your path?

A. Well after she crossed the center line, I knew—

Q. What did you do when she did that?

A. I hit my brakes and pulled over just as far as I could get."

The defendant further testified that the plaintiff did not look either way when she started across the highway, nor at any other time while crossing. He further described her as walking with her head down not looking either way. The defendant stated that the plaintiff got two-thirds across his lane of traffic; he at no time sounded his horn; he did not attempt to swerve left because he did not believe in getting on the other man's side of the road; he drove to the right as far as he could without hitting the mailbox, which object he indicates he fully intended to miss. The defendant said the plaintiff walked into the left rear fender of his automobile. The defendant stated he was driving 45 miles per hour at the time.

The evidence establishes it was raining at the time of the mishap and the highway was wet. It is also established the defendant pulled to his right off the blacktop at a distance of 43 feet before reaching the mailbox, and the right wheels of his vehicle missed the mailbox by about six inches. After the impact, the defendant's vehicle veered to the right off the highway and down an embankment. The record reveals that neither the plaintiff nor the defendant suffers any impairment of sight or hearing. It is established by independent testimony that a driver traveling north over the hill could observe a person walking on the highway in the area of the mailbox for a distance of about 421 feet back south from the mailbox. Highway 69 at the point of the collision is a heavily traveled highway. The accident happened in a rural area during daylight hours, and there is no evidence of oncoming traffic facing the defendant.

There is considerable argument in this Court as to whether the declaration averred facts as would permit the case to go to the jury under the doctrine of last clear chance; and, whether the Trial Judge erred in charging that doctrine. We hold the Trial Judge erred in charging the doctrine because under the facts, the doctrine of last clear chance cannot be invoked against the defendant. This conclusion is based upon our finding that the plaintiff by her testimony is guilty of proximate contributory negligence which continued as a direct and proximate cause of the impact, and she is therefore barred from asserting the doctrine. Todd v. Cincinnati, N. O. & T. P. Ry. (1915) 135 Tenn. 92, 185 S.W. 62; Zamora v. Shappley (1941) 27 Tenn.App. 768, 173 S.W.2d 721; Gardner's Masonry Contractors, Inc. v. St. Louis-San Francisco Railway Co. (Tenn.App.1971) 470 S.W.2d 945.

The difficulty presented is the effect of the conduct of the defendant, considering only his testimony, even though the plaintiff be guilty of continuing and concurring negligence which directly contributed to

the impact. It is the conclusion of this Court that the proper theory upon which the plaintiff should proceed is that of "discovered peril" rather than "last clear chance."

Admittedly, the two doctrines have been treated together, and the courts and text writers have referred to them together or as in the alternative in such manner as to imply there is no difference between the two. We submit this similarity of treatment is not at all justified, and it is the distinction between the two doctrines which would permit the plaintiff in the case at bar to have a trial under the doctrine of discovered peril, even though she cannot rely upon last clear chance.

■ At the outset it must be recognized that reliance upon either doctrine admits of negligence on the part of the plaintiff. If the plaintiff is not guilty of some degree of negligence in placing himself in the perilous position, neither doctrine would be applicable. See: London v. Stepp (1965) 56 Tenn.App. 161, 405 S.W.2d 598.

■ The distinction between the two doctrines is the availability of proximate, continuing contributory negligence as a complete defense to an action based upon last clear chance; whereas, that defense is not available under the doctrine of discovered peril. On the one hand, where the defendant *negligently* fails to see the plaintiff in a position of peril, or *negligently* fails to act so as to avoid injury to the plaintiff after having observed him in that position, the plaintiff's contributory negligence or his remote contributory negligence in so positioning himself must, as in any other lawsuit based upon negligence, be considered and given full force and effect. On the other hand, where it is shown the defendant did see the plaintiff in a position of peril; had ample time, opportunity, and ability to avoid injury; but he continued on in the course of his conduct without taking proper and reasonable precautionary measures available to him, and at all times observing the plaintiff's

continuing negligence, did proceed to inflict the injury, the defense of contributory negligence is not available to the defendant. The first situation being that of last clear chance; the latter being that of discovered peril. The determining aspect being that in the latter situation the defendant did observe the plaintiff's continuing negligence which placed the plaintiff in a position of peril, but did *consciously* fail to exercise those precautionary measures available to him to avoid injury to the plaintiff. The defendant's action in this latter situation is not negligence; it is a willful, deliberate, consciously executed act. The distinction is that of negligence, either simple or gross, on the one hand, and a consciously deliberate act on the other. The discovered peril doctrine therefore comes into play under different rules as to the defense of contributory negligence because those acts which justify the application of the doctrine exhibit on the part of the defendant a degree of deliberateness which the law cannot condone by saying the plaintiff was in error by being there in the first place. See and compare: Kansas City, Memphis and Birmingham Railroad Co. v. Williford (1905) 115 Tenn. 108, 88 S.W. 178; Memphis Street Railway Co. v. Roe (1907) 118 Tenn. 601, 102 S.W. 343; Todd v. Cincinnati, N. O. & T. P. Ry. Co., supra; Hodge v. Hamilton (1927) 155 Tenn. 403, 293 S.W. 752; Tennessee Central Railway Co. v. Ledbetter (1929) 159 Tenn. 404, 19 S.W.2d 258.

In a case dealing with the death of a pedestrian who was run down by an automobile, the court in Hodge v. Hamilton, supra, recognized the distinction between the doctrine of last clear chance and that of discovered peril, insofar as the defense of contributory negligence is concerned. Without referring to either doctrine by name, the Court stated:

"It would be monstrous and inhuman to hold that a driver of an automobile, seeing a pedestrian approaching with his head down and seemingly intoxicated, where he has ample time to bring his automobile to a

stop and sufficient space to steer it to the right and thus avoid a collision, can nevertheless recklessly and wantonly run his car over the pedestrian and escape liability upon the theory that the pedestrian was guilty of such negligence as would bar a recovery. Such a situation does not relieve a railroad company where the injured party was a trespasser upon its track, and certainly it should not be given effect in a case of this character where the injured party was where he had a right to be, and where, according to the plaintiff's theory, the automobile was on the wrong side of the road, the driver thereof saw the deceased in time to have avoided the accident, but did not attempt to do so or to warn deceased of his perilous situation, and where deceased neither saw or heard the approaching automobile in time to get out of its way."

Note the important and determinative factor in the above holding that the defendant saw the plaintiff in a position of peril, and did not take that precautionary action available, *during all of which time the defendant observed, and was consciously aware of the plaintiff's continuing negligence*. Under such circumstances the Supreme Court of Tennessee has held the defendant cannot thereafter rely upon the continuing negligence of the plaintiff as a defense. This is the distinction between the two doctrines; it is not so much the knowledge of plaintiff's peril, as it is the deliberate refusal to take available precautionary measures in the face of the plaintiff's known continuing negligence.

In the case at bar, the defendant stated that he saw the plaintiff as she was getting out of an automobile, walk around the back of the automobile and out onto the highway. The defendant said the plaintiff did not look toward him at any time, but proceeded to walk with her head down. Taking these facts as true, the defendant knew the plaintiff was negligently placing herself in extreme danger. The defendant, however, during all this time, did not sound his horn as a warning; he did not slow down his vehicle which he most assuredly could have done; he did not apply brakes until after the plaintiff had crossed the center line; he did not swerve to the left traffic lane which was open to him; but he continued his course of travel fully conscious of the effect thereof on the plaintiff in her dangerous position. These facts as related by the defendant would entitle the plaintiff to a trial under the doctrine of discovered peril, and her continuing negligence would not constitute a bar thereto.

█ The distinction between the two doctrines requires that each be specifically averred, and requires that each be specifically charged to the jury. The reason being that proximate, continuing contributory negligence and its lesser cousin, remote contributory negligence, come into the picture under an allegation and charge of the doctrine of last clear chance. Whereas under a specific allegation of discovered peril, supported by material evidence, the jury should be charged that upon a finding of that conduct by the defendant, the contributory negligence of the plaintiff is not to be considered in any degree.

Appellant's Assignment of Error II that the Trial Judge erred in his charge to the effect a party may be guilty of excessive speed under the circumstances even though he may not be exceeding the speed limit prescribed by state statute becomes moot upon our remand for a new trial and is therefore overruled.

█ Appellant's Assignment of Error IV that the Trial Judge erred in his charge to the jury concerning the law applicable to an aggravation of preexisting infirmities of the plaintiff is overruled. The law on that subject as charged by the Trial Judge is substantially correct, and in the absence of a special request for a more explicit charge, the Trial Judge will not be held in error.

Having concluded the doctrine of last clear chance is not available to the plaintiffs, the question arises as to the disposition of this appeal. The plaintiff did not plead, nor did the Trial Judge charge the doctrine of discovered peril, which we conclude is the only course of action available to the plaintiffs. It is true the jury found for the plaintiffs, but we cannot affirm for the reason the jury was erroneously instructed on the doctrine of last clear chance. We feel justice dictates that this cause be remanded with the right in the plaintiffs to plead properly the doctrine of discovered peril. The defendant may file such additional pleas thereto as he deems appropriate, and a new trial is granted upon the issues as formed.

It results the defendant's Assignment of Error III is sustained; the judgment of the Trial Court is reversed, and this cause is remanded for a new trial in accordance with this opinion. The accumulated costs to date in the Trial Court and in this Court are adjudged against the plaintiffs; the cost of the new trial to abide the outcome thereof.

CARNEY, P. J., and NEARN, J., concur.