HORACE SULLIVAN and wife, GENEVA R. SULLIVAN,
Appellants,

*v.*

HARPETH DEVELOPMENT CORPORATION, Appellee.

401 S.W.2d 195.

(*Nashville*, December Term, 1965.)

Opinion filed February 7, 1966.

Petition for Rehearing Denied April 11, 1966.

108

Robert J. Warner, Jr., Nashville, for appellants.

Clarence Evans, Nashville, for appellee, Farris, Evans & Evans, Nashville, of counsel.

Mr. Justice Creson delivered the opinion of the Court.

This appeal comes from the Chancery Court of Davidson County. Appellants sought an injunction in that Court against appellee's operation of a cemetery on land directly across Highway 100 from appellants' home, on the basis that the appellee had not obtained the requisite permission from the proper authorities required under T.C.A. sec. 46-101.

The Trial Court dismissed appellants' Original Bill, basing this dismissal upon a finding that the appellants lacked standing to sue. Appeal has been perfected directly to this Court, as the case was heard below on a stipulation of facts.

It is agreed in this stipulation that appellants are the owners of a house and lot situated on Highway 100 within the limits of the Metropolitan Government of Nashville, Davidson County, Tennessee. Appellee, a Tennessee corporation, was authorized to engage in the cemetery business for profit. On December 9, 1964, it acquired a 25-acre tract situated directly across Highway 100 from appellants' home. During the winter and spring of 1965, appellee undertook development of this tract as a cemetery. It is stipulated that the appellee's employee, if called as a witness, would testify that he had informed the appellants on December 9, 1964, in some detail, that the development of a cemetery on this land was planned. Appellants admit that they were informed by appellee that it was planning to develop a cemetery on the previously referred to tract of land, around January 1, 1965.

On April 15, 1965, appellants filed this suit seeking an injunction prohibiting the appellee from operating, maintaining, or otherwise engaging in the cemetery business at the location in question. In the Trial Court, the appel-

lants relied solely upon the provisions of T.C.A. sec. 46-101, which read as follows:

"*Powers of cemetery corporations—Purchase of land—Location—Laying off and subdivision—Sale of lots.*—Cemetery corporations shall have the power to purchase land, not exceeding two hundred (200) acres, situated not less than one (1) mile, to be measured by way of the most direct public thoroughfare to the said land, from the corporation line of a town containing fifteen thousand (15,000) inhabitants, and not less than one mile and a half (1½), to be measured by the way of the most direct public thoroughfare to said land, from the corporate line of a city or town containing a greater number of inhabitants, to be used as a cemetery forever; to lay the same off in suitable avenues or walks and embellish with trees, shrubbery, and flowers, and to subdivide the land into lots suitable for graves, monuments, and vaults, and sell the same in such manner as the board of directors may determine; provided, that said population shall be estimated by the federal census of 1950 or any subsequent federal census; and, provided further, that any land may be purchased and used as a cemetery at any place within or without said corporate line, after the proposed location shall have been approved by resolution of the governing body of such city or town."

The Chancellor found that this statute granted to the governing bodies of cities the right to approve or reject land for use as a cemetery, but did not confer on the appellants standing to sue to prevent an attempted use. The Chancellor took the view that the statute did not authorize a private individual to bring suit to restrain a

defendant from conducting a business without obtaining the required permission of the city's governing body.

On appeal, the appellants rely upon the following Assignments of Error:

"1. The Chancellor erred in holding that the appellants had no standing to bring this suit.

2. The Chancellor erred in not holding that appellee's use of the property in question for cemetery purposes without obtaining approval of the governing body of the Metropolitan Government of Nashville and Davidson County, Tennessee, is illegal.

3. The Chancellor erred in not enjoining the appellee from operating or maintaining a cemetery on the property in question as prayed for in the original bill."

In support of these Assignments of Error, appellants now rely upon Chapter 405 of the Private Acts of 1925 which reads, in part, as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That hereafter no cemetery shall be established, nor shall any existing cemetery be enlarged, in any county in this State having a population of 220,000 or more persons by the Federal Census of 1920, or any subsequent Federal Census, unless and until such establishment or enlargement shall have been approved by the Quarterly County Court of such county, and by the Quarterly County Court and legislative body of any incorporated city in such county, if such cemetery shall lie within such incorporated city, or within five miles of the corporate limits of such city. Any person, firm, corporation or association intending to lay out a cemetery, or enlarge

an existing cemetery within such county, shall first file a verified petition with the Quarterly County Court or with such court and the legislative body of any incorporated city within such county, as the case may be, setting forth the plans for such cemetery, by whom to be owned, operated or conducted, the general plan for the operation of such cemetery, which shall be accompanied by maps or plats showing its location and subdivision, and the boundaries thereof. * * *''

Sec. 3. Be it further enacted, That it shall be unlawful to lay off, establish, operate, sell lots in, or permit the burial of the dead in any cemetery established, laid out or enlarged after the passage of this Act unless and until the approval of the county and municipal authorities shall have been secured as hereinbefore set out. And any county or city, or any person aggrieved by the establishment of a cemetery or enlargement of an existing cemetery in violation of the provisions of this Act may file its or his injunction bill to restrain the same in any court of competent jurisdiction; and any court now or hereafter having general jurisdiction of injunction bills shall have jurisdiction and power to enjoin the establishment or enlargement of a cemetery in violation of the provisions of this Act, and to abate as a public nuisance the use of any land for cemetery purposes in violation of the provisions of this Act.''

It is the contention of the appellee here that the Court cannot properly consider questions based upon the provisions of this Private Act, raised for the first time on appeal. This contention of appellee may be well founded for it is a well-settled rule of this Court that it will not, on appeal, consider matters not raised in the

Trial Court; and thus presented for the first time on appeal.

However the above may be, it is left for this Court to determine if these appellants had, contrary to the decision of the Chancellor, standing to sue, under T.C.A. sec. 46-101. T.C.A. sec. 46-101 is a part of the statutes dealing with the organization of cemetery corporations, their power and functions. It is in no way associated with any zoning statutes or statutes authorizing zoning regulations. The caption of this Section reads, ''Powers of Cemetery Corporations.'' After full and critical comparison of the cemetery statutes as against the statutes with respect to zoning, we are of opinion that the Court below is correct in its view that cases relied upon by appellants, *City of Knoxville v. Peters* (1945), 183 Tenn. 93, 191 S.W.2d 164; *Garrou v. Teaneck Tryon Co.*, 11 N.J. 294, 94 A.2d 332, 35 A.L.R.2d 1125, recognizing the right of private citizens to relief against defendants who have violated zoning ordinances are not apposite to the present case.

█ Rather, the present case is one in the nature of a *quo warranto* proceeding, in that the statute under which it is brought is one dealing with corporate powers. It is well settled that such a suit must be brought in the name of the sovereign and no individual has any standing to bring such a suit in his own name. See *City of Fairview v. Spears* (1962), 210 Tenn. 404, 359 S.W.2d 824.

█ It appears from the record that the appellants had notice some four months before bringing this action that the appellee intended to develop a cemetery on the land in question. During this period, it must have been obvious to the appellants that the appellee was expending

large sums of money to acquire the land, clear the land, and make it suitable for use as a cemetery. The only objection ever made known to appellee was contained in a letter dated December 21, 1964 from the law office of Warfield & Entrekin. This letter is attached as an Exhibit to the Stipulation used in this cause. It is no more than that these attorneys represent unknown owners of property in the area. It is said that appellee had ''no authority to develop this property for cemetery purposes at this time by reason of Section 46-101 of Tennessee Code Annotated.'' Both the seller and the appellee, as buyer, had been assured by the officials of the Metropolitan Government that all was right and proper for its proposed cemetery development. In this situation, it would appear that in a Court of Equity the appellants are barred by laches from obtaining any relief, even if they had standing to seek such relief. See Vol. 1 Gibson's Suits in Chancery 73 (Sec. 58, 5th Ed.) and *Madison v. Ducktown Sulphur, Copper & Iron Co.* (1904), 113 Tenn. 331, 83 S.W. 658, where it is said:

''Thus if a party sleeps on his rights and allows a nuisance to go on without remonstrance, or rather without taking measures either by suit at law or in equity to protect his rights, and allows the party to go on making large expenditures about the business which constitutes the nuisance, he will be regarded as guilty of such laches as to deprive him of equitable relief, particularly until the right is first settled at law. And when the delay is also coupled with an acquiescence he will be deprived of all equitable relief, and may be placed in a position where the court will enjoin him from proceeding against the nuisance at

law, or even to prevent the recovery of a judgment obtained therefor in a court of law.''

The application of the doctrine of laches bars recovery even if this Court were to determine that the appellants had standing to sue under T.C.A. sec. 46-101. However, this Court is of the opinion that the Chancellor's decision on that issue was correct. A careful reading of T.C.A. sec. 46-101 leaves no doubt that it was intended to set forth the procedure a corporation qualified to engage in the cemetery business was to follow in developing a cemetery in or close to a city or town. The contention of appellants that this statute is analogous to a local zoning law is not well reasoned.

It is also the contention of the appellee that even if the appellants had standing to sue, the result reached is nevertheless correct. The zoning regulations in effect prior to the organization of the Metropolitan Government for Nashville and Davidson County were continued in effect under Section 20.02 of the Charter of the Metropolitan Government which provides that zoning regulations in effect in Davidson County at the time of the effectiveness of the Charter ''shall continue in force and effect until amended by the Council * * or until revised, modified or changed by the Council * * *'', authorized a cemetery to be operated at the location in question. The appellee contends that since the Council has taken no action changing the previous authorized usage as a cemetery, and since the Council is the governing body of Davidson County, it therefore has approved the usage of the land as a cemetery. It is here again significant that the officials of the Metropolitan Planning Commission advised both buyer and seller of the land involved that the cemetery could be established without further

authorization by the Metropolitan Government. It could be concluded, in all good reason, though unnecessary to the disposition of this case, that any authorization required by T.C.A. sec. 46-101 has been obtained.

It is the opinion of this Court that the decree of the Trial Court should be affirmed, with costs against the appellants.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CHATTIN, JUSTICES, concur.

## Opinion on Petition to Rehear

MR. JUSTICE CRESON.

Since the filing of the Court's original opinion in this case, the appellants have filed a dignified petition to rehear. The main thrust of this petition is that the Court has either overlooked or ignored a provision of Chapter 405 of the Private Acts of 1925, conferring upon appellants the right to sue in actions of the character here involved.

Now, the office of petition to rehear is to call to the attention of the Court matters overlooked; not to re-argue those things which the losing party supposes were improperly decided, after the Court has given the same full consideration. This Court has said, and says again, that a petition for a rehearing should never be used for the purpose of re-arguing the case on the points already considered and determined; unless some new and decisive authority has been discovered, which was overlooked by this Court. Rule 32 of this Court governs the subject of rehearing and provides:

"A rehearing will be refused where no new argument is made and no new authority adduced, and no material fact is pointed out as overlooked."

Appellants now urge that this Court failed to take into consideration Chapter 405 of the Private Acts of 1925; and, failed to give due effect to the same. It would seem to be sufficient here to say that this Court, while entertaining serious doubt as to the constitutionality of this Private Act, as sought to be applied by appellants, assumed its constitutionality for the purpose of decision. It should be obvious that this Private Act was considered, for a goodly portion thereof is quoted in the original opinion. What this Court said in its original opinion, and says again, is that this Court, after assuming that the appellants had standing to sue, concluded that the appellants failed to timely pursue such right; and that the doctrine of laches precluded their successful prosecution.

Finding no merit in the petition to rehear, the same is denied.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CHATTIN, JUSTICES, concur.