GARDNER'S MASONRY CONTRACTORS, INC., Appellant-Appellee, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY and J. W. HART, Appellant-Appellee. —470 S.W.2d 945.

Western Section. May 25, 1971.

Certiorari Denied by Supreme Court September 20, 1971.

William C. Bateman, Jr., and Max Shelton, Memphis, for plaintiff; Chandler, Manire, Johnson & Harris, Memphis, of counsel.

G. Wynn Smith, Jr., Memphis, for defendants; Canada, Russell & Turner, Memphis, of counsel.

MATHERNE, J. The plaintiff Gardner's Masonry Contractors, Inc. sued St. Louis-San Francisco Railway Co. and its employee, J. W. Hart, for property damages to a material hoisting vehicle (hereinafter called a "Sky-trak"), which was struck by the defendant company's switch engine during a switching operation on a spur track on January 12, 1966.

The lawsuit was first tried on February 19, 1968 when the Trial Judge directed a verdict in favor of the defendants. On motion for a new trial filed by the plaintiff, the Trial Judge granted the motion and ordered a new trial. The defendants duly excepted to the order granting a new trial, prepared and filed a wayside bill of exceptions preserving the record of the first trial.

At the second trial the jury found in favor of the plaintiff and awarded damages of $3,000.00. Judgment was entered on that verdict.

The defendants on appeal insist (1) The Trial Court erred in granting the motion for new trial after the first trial of the case; (2) The Trial Court erred in overruling their motion for a directed verdict at the second trial; (3) The Trial Court erred in its charge to the jury on the doctrine of last clear chance; and (4) The Trial Court erred in refusing to charge certain special requests.

The plaintiff on appeal assigns as error (1) The failure of the Trial Judge to direct a verdict in its favor as to the issue of damages; and (2) The Trial Judge erred in overruling plaintiff's motion for the suggestion of an additur in accordance with T.C.A. sec. 20-1330.

On appeal we must first dispose of the defendants' assignment of error that the Trial Court erred in granting the plaintiff a new trial after having directed a verdict in favor of defendant at the first trial. Meacham v. Woods (1959) 205 Tenn. 18, 325 S.W.2d 281. This question raises the issue of whether the Trial Judge should have directed a verdict in favor of the defendants at the first trial, and requires a review of the pleadings and proof of that trial. T.C.A. sec. 27-108.

The facts establish the plaintiff was constructing the walls of a building known as the Kellogg building. A spur track of defendant company ran along the south wall of the building being constructed. This spur track curves away from the wall to the extent of ninety degrees. The plaintiff had constructed scaffolds along the south

wall on which masonry building materials were deposited and upon which workmen stood and worked. At the time of the accident the south wall had been built to a height of about twenty feet.

The plaintiff owned and used a hoisting machine, referred to as a Skytrak, by which building material was hoisted to the scaffold. This Skytrak could raise the load of materials some twenty-five feet high and then boom the load out horizontally to a distance of thirty-one feet, six inches. When the Skytrak boomed the load outwardly the mechanism automatically locked the machine so it could not be moved. The Skytrak would remain locked and immobile until the booming mechanism had retracted to within eighteen inches of the hoist. The time required for the booming mechanism to retract from fully extended to within eighteen inches of the hoist is from forty to forty-five seconds.

The plaintiff's employees constructed a ramp on defendant company's spur track near the south wall of the Kellogg building. This ramp consisted of railroad cross ties placed horizontally with the rails on the track and a filling of gravel. Plaintiff's employees would park the Skytrak on this ramp and hoist and boom material to the scaffold on the south wall. Plaintiff's foreman testified this particular location of the ramp was necessary in order to properly elevate and boom the materials considering the angles, wall and scaffolding. The ramp had been so used for three weeks prior to the collision complained of.

On the occasion of the collision plaintiff's employee Richardson was operating the Skytrak. Richardson, driv-

ing the Skytrak, approached the ramp with a load of about 1,000 pounds of building material. Richardson had to stop and allow a switch engine, pushing ten or twelve cars, to back along the spur track. After the switch engine backed easterly over the ramp and around the curve, Richardson proceeded to drive the loaded Skytrak upon the ramp built on the spur track. The switch engine stopped at a distance of about fifty feet from the ramp according to Richardson, and about eighty feet from the ramp according to the engineer operating the train. The switch engine was in plain view of Richardson at all times.

Richardson hoisted the load and extended the boom the full distance of thirty-one feet so as to deposit the load of material. While the boom was fully extended Richardson observed the switch engine proceeding forward around the curve toward the Skytrak. Richardson attempted to retract the boom, but was unable to do so before the switch engine ran into the Skytrak causing the property damage sued for. Richardson leaped clear of the collision and was not injured.

Richardson admitted he knew the train which passed over the ramp was a switching operation; the train would be coming back over the ramp at some time; and the Skytrak would for a period of time be locked on the spur track. Richardson stated the switch train would use the spur track daily and at times it would proceed much farther east or south around the curve down to the Army Depot. Richardson did not know how far this particular train was to go, but admitted the engine was stopped before he parked the Skytrak on the ramp. Richardson did not warn the train crew of his obstruction of the

spur track, and did not post any flagman or lookout for a movement of the train.

The defendant engineer Hart testified he backed the cut of cars onto the spur track for the purpose of depositing a couple of cars to the Kellogg plant. He stated the train was stopped about two minutes for the cars to be uncoupled. Hart testified he began ringing the bell upon his movement forward after depositing the cars, he did not sound the whistle. His position was on the right side of the engine cab, and he could not see the Skytrak because the front of the engine obscured his view around the curve. Hart admitted he made no effort to ascertain if the spur track in front of him was clear, he deemed the ringing bell sufficient to guarantee a clearance of the track which he could not see because of the curve and his position in the cab. There was a three man crew, including Hart, on the switch train and not one of these people were in position to see the Skytrak, or the spur track around the curve. Hart knew there were men working on the south wall of the Kellogg building, and he knew construction machinery was in the area. No member of the train crew knew the Skytrak was on the spur track.

A workman on the wall testified he saw the collision and the engineer was looking back down his string of cars at the time, and never looked forward in the direction he was moving the train.

The plaintiff proved the cost of repairing the Skytrak was $5,645.75.

At the first trial the Trial Judge held the plaintiff barred from recovery due to the proximate contributory

negligence of the employee Richardson, and directed a verdict for the defendants. On motion for a new trial the Trial Judge reversed his decision on the directed verdict and granted the plaintiff a new trial. It appears from the record the ground for allowing a new trial was that the plaintiff had established sufficient facts upon which it might recover under the doctrine of last clear chance, even though plaintiff be guilty of contributory negligence.

■■ We agree with the Trial Judge that the plaintiff was entitled to go to the jury under the doctrine of last clear chance. Where, as here, there is a duty on the defendant to maintain a lookout for others it is not necessary the defendants have actual knowledge of the peril of the plaintiff in order for the doctrine to be applicable. Our Supreme Court in Vaughn v. City of Alcoa (1952) 194 Tenn. 449, 251 S.W.2d 304, stated the applicability of the doctrine to be as follows:

"This doctrine is an arbitrary exception to the law barring recovery for contributory negligence of the plaintiff based upon the theory that the defendant is negligent in not extricating the plaintiff from his place of danger after it is discovered *or should have been discovered,* notwithstanding the fact that the plaintiff was guilty of contributory negligence in placing himself in danger." (Emphasis added)

See also: Memphis Street and Railway Co. v. Haynes (1904) 112 Tenn. 712 at 717, 81 S.W. 374; Hale v. Rayburn (1953) 37 Tenn.App. 413, 264 S.W.2d 230; Erosion Control Corp. v. Evans (1967) 58 Tenn.App. 90, 426 S.W.2d 202.

296

■ The plaintiff alleged in its Declaration the defendants were liable because "* * * 2. In that they knew of or should have known of the presence and perilous position of the plaintiff's forklift tractor on the tracks, which machine was in plain view, and failed to exercise reasonable and ordinary care to stop the machine and avoid the collision." We hold this allegation is sufficient to invoke the doctrine of last clear chance.

The defendants pleaded and argue the doctrine is not available because the plaintiff was guilty of gross and willful negligence is positioning the Skytrak on the spur track of defendant. The defendants cite as authority. Todd v. Cincinnati, N. O. & T. P. Ry. (1915) 135 Tenn. 92, 185 S.W. 62; Harbor v. Wallace (1946) 31 Tenn.App. 1, 211 S.W.2d 172; Zamora v. Shappley (1941) 27 Tenn. App. 768, 173 S.W.2d 721.

■ In this connection we deem it important to point out in no case can the plaintiff rely upon the doctrine of last clear chance where the plaintiff's negligence continues and is concurrent with the negligence of the defendant as a causal factor up to the time of the event which causes harm. It matters not whether the plaintiff is guilty of simple negligence or gross negligence, if that negligence is continuing to the event the doctrine cannot be applied as against the defendant. On the other hand we hold it matters not whether the plaintiff's negligence be gross or simple, if that negligence is spent, and does not continue as a causal factor, the doctrine of last clear chance may be asserted against the defendant if it is otherwise applicable.

Applying the foregoing to the cases relied on by the defendants, we find in the *Todd* case a pedestrian was struck by a train while standing on a railroad track with his back toward the train, he never having looked in the direction of the approaching train. The Court held the duty of a pedestrian to look and listen continued as long as he was on the track, and his failure to do so constituted continuing negligence on his part, which proximately contributed to his injury and he could not rely upon the doctrine of last clear chance.

In the *Zamora* case the decedent walked into the side of defendant's automobile and was fatally injured. The Court held, "the negligence of the decedent amounted to a reckless disregard for his own safety *and continued as a causal factor* to the moment of the collision," and refused to apply the doctrine of last clear chance. (Emphasis added)

In the *Harbor* case the plaintiff child ran across a highway when she saw or should have seen the defendant's automobile approaching, and without taking any precaution for her own safety was struck by defendant's car. The Court in that case did state: "A plaintiff who is so reckless as to be in disregard of his own safety may not be heard to invoke the doctrine of last clear chance," and cited the *Todd* case as authority. The facts in the *Harbor* case establish continuing negligence on the part of the plaintiff as a causal factor, and we hold the Court there so intended the statement above quoted.

See also: Tennessee Central Ry. Co. v. Ledbetter (1929) 159 Tenn. 404, 19 S.W.2d 258; Southern Railway Co. v. Whaley (1936) 170 Tenn. 668, 98 S.W.2d 1061;

Grigsby & Co. v. Bratton (1913) 128 Tenn. 597, 163 S.W. 804; Johnson v. Warwick (1922) 148 Tenn. 205, 254 S.W. 553.

The negligence of the plaintiff's employee Richardson, whether simple or gross, was spent when he parked the Skytrak, elevated the hoist and extended the boom over to the scaffold on the south wall of the building. Under the circumstances it was impossible for him to remove the Skytrak from the path of defendant's moving switch engine even though the proof establishes he tried to do so.

The defendant engineer Hart testified he could have stopped the engine within four feet. Under the circumstances there was a duty on the engineer and train crew to maintain a lookout ahead, and had they done so they would have discovered the position of peril occupied by the plaintiff's Skytrak and could have avoided the collision.

We therefore conclude the plaintiff was entitled to go to the jury and the Trial Court correctly granted a new trial, and properly reconsidered his action on the directed verdict at the first trial. Defendants' first assignment of error is therefore overruled.

At the second trial the evidence was substantially the same as herein outlined at the first trial. The defendant did not put on any proof at the second trial, however, the plaintiff did read a deposition of the defendant engineer Hart at the second trial as part of his proof in chief, which deposition substantially conforms to the testimony of that defendant at the first trial. Defendants' second assignment of error that the Trial Court should have directed a verdict at the second trial is overruled.

By their third thru sixth assignments of error the defendants claim (1) The Trial Court erred in instructing the jury on the doctrine of last clear chance because the proof established the defendants' crewmen had no knowledge of the obstruction on the track; (2) In failing to charge defendants' special requests which would require a finding of knowledge on the part of the train crew before the doctrine could be applied; (3) In failing to charge defendants' special request the doctrine of last clear chance has no application where the plaintiff is guilty of gross negligence; and (4) Failing to instruct the jury that the doctrine of last clear chance had no application to the case.

For the reasons heretofore stated, and under the authorities heretofore cited, we overrule each of the foregoing assignments as set out by the defendants.

We will now consider the plaintiff's assignments of error that a verdict should have been directed in its favor as to the amount of damages, and an additur should have been suggested to bring the award up to the uncontradicted proven amount of damages.

In respect to these assignments of error we hold the uncontradicted proof established the amount of damages suffered at $5,736.38, whereas, the jury awarded only $3,000.00.

Under the facts of this case the train crewmen did not know of the position of the Skytrak on the spur line, the defendants cannot be liable under the doctrine of discovered peril. There was ample material evidence before the jury that the defendant's employees were neg-

ligent in the operation of the switch engine, and also that the plaintiff's employee was guilty of such contributory negligence as was not continuing and concurrent with the negligence of the train crewmen, but was remote as that doctrine was explained to the jury. Under these circumstances we hold the amount of damages was a jury question, and the jury must have considered the remote contributory negligence, as it was bound to do, and was justified in reducing the amount of recovery to the figure of $3,000.00 based thereon. Railroad v. Williford (1905) 115 Tenn. 108, 88 S.W. 178.

It results both assignments of error filed by the plaintiff are overruled.

All assignments of both appealing parties having been overruled, the judgment of the Trial Court is affirmed. The cost of this appeal is adjudged one-half against each appealing party.

Carney, P.J., and Nearn, J., concur.