Elliot Crawford STREET, Administrator
of the Estate of Doris C. Street,
Deceased, Petitioner,

v.

David CALVERT and Joe Calvert,
Respondents.

Supreme Court of Tennessee.

July 6, 1976.

Rehearing Denied Sept. 27, 1976.

Jack S. Magids, Krivcher & Magids, Memphis, for petitioner.

John J. Thomason, Thomason, Crawford & Hendrix, Robert V. Redding, Memphis, for respondents.

## OPINION

FONES, Justice.

We granted the writ of certiorari in this case and expressly limited consideration to the following: (1) the effect of the failure of the trial judge to instruct on the doctrines of discovered peril and last clear chance; (2) is the posture of this case such that this Court may properly consider the adoption of a rule of comparative negligence; (3) the propriety of adopting such a rule; and (4) the type of comparative negligence which should be adopted.

### I.

Doris C. Street was walking across Hale Road to her mailbox on the opposite side from her residence when she was struck by an automobile driven by David Calvert and owned by his father Joe Calvert. She sustained serious injuries that resulted in her death more than seven (7) months after the accident, during which time she was unable to relate what occurred.

A jury verdict for defendants was approved by the trial judge and the Court of Appeals affirmed.

The only error we find was the failure of the trial judge to give an instruction to the jury on the doctrine of last clear chance, an exception to the contributory negligence rule, recognized in various forms by the courts of Tennessee since before the turn of the century. In our opinion the proof most favorable to plaintiff's theory embraced all

of the essential elements of discovered peril. The probative value of that proof was a proper question for the jury.

## II.

The essential evidence necessary to relate for our consideration of the case follows.

Mrs. Street's house was on the south side and her mailbox was on the north side of Hale Road, a street twenty-two (22) feet wide with no sidewalks, curbs or gutters. Approaching from the east, visibility was unobstructed for at least six hundred (600) feet from the accident scene; and although it was raining lightly at the time of the accident, visibility was not affected by the precipitation. Mrs. Street returned from a quilting party at church about 3:15 p. m. in the automobile of Mrs. Maude Johnson, who testified that she stopped in front of the Street residence and observed Mrs. Street exit the car and start up the steps toward her front door. Mrs. Johnson then drove away from the Street residence in the eastbound lane of Hale Road and did not observe any cars coming from the east. Another witness testified that she saw Mrs. Johnson depart two (2) or three (3) minutes before the accident occurred. It was virtually undisputed that Mrs. Street was only one (1) or two (2) feet from the north edge of the pavement, directly in front of her mailbox, when she was struck by the defendants' vehicle at the right front headlight.

Two witnesses testified that there was a single skid mark, one hundred sixty (160) feet in total length, beginning five (5) to eight (8) feet west of a neighbors mailbox, running in a straight line, but with an angle to the right, so that it went off the north edge of the pavement beyond Mrs. Street's mailbox. On the day of the accident the distance was estimated, by the width of the one hundred (100) foot lots on Hale, to be one hundred fifty-five (155) to one hundred sixty (160) feet. Months later, after the mark was not visible, Mr. Whitson and his son measured the distance and recorded same on paper, exhibit fifteen (15) in the record. According to that measurement, the skid mark began eighty-one (81) feet east of Mrs. Street's mailbox and left the north edge of the pavement seventy-eight (78) feet west of her mailbox. At the beginning point the skid mark was shown to be three (3) feet from the north edge of the pavement. Its northward angle had reduced in distance from the north edge of the pavement to fifteen (15) inches as it passed the mailbox where Mrs. Street was struck.

There was testimony that a few days after the accident, David Calvert said that he saw Mrs. Street "on top of the steps," or "on the walk." While there was no sidewalk paralleling Hale Road, a paved walk with three steps near the edge of the street extended from the street to the front of the Street residence.

Defendants denied that any skid marks were there the next day, and denied that David made any statement about seeing Mrs. Street on the walk. It was not disputed that at least one of the right wheels on the Calvert vehicle was off the north side of the pavement when the car came to rest.

Calvert testified that he was driving his father's vehicle thirty (30) miles per hour in a thirty-five (35) mile zone because the roads were slick; that he first saw Mrs. Street when she stepped "from behind the car to the middle of the road" heading toward her mailbox. At that time he testified he was approximately ninety (90) feet away and that he attempted to stop his car; that all four wheels "stopped turning," or "locked," and when he attempted to steer his car to the left to avoid Mrs. Street, the car did not react but continued in a straight line; that he did not blow the horn because he was in the process of turning left to pass behind her; that had his car turned he would have missed Mrs. Street and the car parked in front of her house. He testified, at another stage of the trial, that when Mrs. Street reached the center of Hale Road he was ninety (90) feet away. He said that she had her right hand on top of her head and at all times was looking straight ahead and walking toward her mailbox.

## III.

The origin of the last clear chance doctrine is traced to *Davies v. Mann*, 10 M & W 546, 152 Eng.Rep. 588 (1842). In the intervening years it has been the most frequently applied modification of the strict rule of contributory negligence, but its application has been fraught with confusion arising from the widely varying statements of the essential elements of the rule and the search for a lucid rationale.

In Tennessee, *Todd v. Railroad*, 135 Tenn. 92, 185 S.W. 62 (1915), has made a substantial contribution to the conflicting decisions that now exist in our reported cases.

Todd was struck by a railroad car at a public crossing. Carrying a bag of corn he walked to the highway crossing and found the way obstructed by defendant's cars, engaged in switching operations. After some delay he crossed over the first, second and third tracks, but put his sack of corn down on the third track and took a position on the end of the cross ties on the third track to await clearance on the fourth track. He was engaged in conversation with another man looking continuously south for twenty (20) minutes. His attention was apparently further riveted to the south, by another freight train that approached from that direction on the second track, as he continued to wait. Thereupon, several cars were backed from the north down the third track and the rear car struck Todd on the right hip and knocked him to the ground causing him injury. He did not see or hear the train approaching. There was no brakeman, and there was no evidence that the enginemen saw Todd.

Thus, the court was presented with an inattentive plaintiff and a defendant in an undiscovered, but in the exercise of reasonable care, discoverable situation.

The trial judge directed a verdict for defendant railroad; the Court of Appeals held that the case should have been submitted to the jury. The Supreme Court agreed with the trial judge and dismissed the suit.

The court held that Todd was guilty of gross negligence as a matter of law, with the result that Todd could only avail himself of the "discovered peril" version of last clear chance.

"He was guilty of gross negligence; he knew that he could not cross over and continue his journey as a traveler on the highway; he stood in a dangerous place with his back turned towards a source of danger for an unreasonable time and disregarded the increase of dangers about him. The above principle is itself subject to a modification likewise grafted by the law for reasons of public policy. A defendant who is grossly negligent and reckless to the point of acting in disregard of the rights of others or of imputed willfulness cannot avail himself of a plea of plaintiff's contributory negligence; nor may a plaintiff who is acting so recklessly as to be in utter disregard of his own safety to be heard to invoke the application of the principle above discussed. The law will refuse to impose on the defendant in his behalf any other than the doctrine of actually discovered peril. His negligence is considered to be proximate in the chain of causation.

A number of cases reach this result, whether based on this reasoning or not." 135 Tenn. at 108, 109, 185 S.W. at 66.

Earlier in the opinion the Court cited with approval *Railway v. Haynes*, 112 Tenn. 712, 81 S.W. 374 (1904) which may be said to support a version of the doctrine of last clear chance now generally referred to as discoverable peril. The Court's comment was as follows:

"Quite as common and yet a more apt illustration is that of a motorman of a street car bound to vigilance with regard to the safety of those travelers who are making use of the public street on which his car is operated, and in such case this court has held that actual discovery of plaintiff's peril is not necessary to convict the defendant company of negligence, but it is bound by what its motorman could have discovered in the exercise of ordinary care. *Railway v. Haynes*, 112

Tenn. 736, 81 S.W. 374. And see, generally, 2 Nellis on Street Railways (2d Ed.) section 462." 135 Tenn. at 107, 108, 185 S.W. at 65.

In our opinion the holding of *Todd* is that Tennessee recognizes discovered peril and discoverable peril at least where defendant is engaged in activity hazardous to the public; that if the plaintiff is guilty of gross negligence as a matter of law he can only avail himself of discovered peril.

In addition to the above quotes, the opinion in *Todd* contains an exhaustive analysis on the law of contributory negligence and remote contributory negligence in England and the United States, and a number of ambiguous comments thereon. That portion of the opinion which we regard as dicta has been used as authority in a number of subsequent Tennessee cases to reject application of the doctrine of last clear chance by finding, as a matter of law, that plaintiff's negligence continued up to the moment of the accident and was a proximate cause thereof. This is merely another way of saying that the plaintiff's theory that the last clear chance doctrine applies is rejected and all that remains is application of the basic rule of contributory negligence.

Subsequent cases have also referred to *Haynes* and *Todd* as limiting discoverable peril to situations involving a business or operation hazardous to the public such as railroads.

But in *Hodge v. Hamilton,* 155 Tenn. 403, 293 S.W. 752 (1927), this court clearly held the doctrine of discovered peril applicable to an automobile-pedestrian accident. Hodge was walking south on the west side of a paved road occupying one-fourth thereof when an automobile coming from the opposite direction struck him. The driver of the automobile had available a space of twelve (12) feet in which to pass the pedestrian. There was proof that Hodge was walking with his head down; that the automobile made little noise; and that the driver did not sound the horn or make any effort to warn Hodge of the approach of the automobile.

The Supreme Court stated that in view of the foregoing evidence the trial court should have charged the jury,

". . . that, if they found that the deceased was guilty of negligence, but further found that the defendant had actual knowledge of the danger or peril of deceased, and could have avoided the accident, by the exercise of ordinary care, and did not do so, plaintiff would be entitled to recover." 155 Tenn. at 409, 293 S.W. at 754.

In *Harbor et al. v. Wallace,* 31 Tenn.App. 1, 211 S.W.2d 172 (1946), the Court of Appeals Western Section, after holding that the doctrine of last clear chance did not apply, stated the doctrine as follows:

"This doctrine is that even though the plaintiff was negligent, yet, if the defendant after discovering her peril, *or by the exercise of ordinary care should have discovered it,* could have avoided the consequence of such negligence by the exercise of ordinary care and failed to do so, the defendant is liable." (Emphasis added) 211 S.W.2d at 175.

However, in *Hadley v. Morris,* 35 Tenn. App. 534, 249 S.W.2d 295 (1951), that section of the Court of Appeals appears to have interpreted *Todd v. Railroad, supra,* as restricting the application of the last clear chance doctrine to discovered peril. Therein it was noted that the doctrine of discoverable peril would be available where defendant was engaged in a business hazardous to the public, such as railroads, electric power companies and others, if operating dangerous instrumentalities.

In *Smith v. Burks,* 43 Tenn.App. 32, 305 S.W.2d 748 (1957), the doctrine of last clear chance was stated under circumstances indicating the court felt it to be limited to discovered peril.

In *Hale v. Rayburn,* 37 Tenn.App. 413, 264 S.W.2d 230 (1953), Court of Appeals Eastern Section, the last clear chance doctrine was stated so as to include discoverable peril, citing *Harbor et al. v. Wallace, supra.* Defendant had testified that he saw plaintiff's decedent just as she stepped from behind a truck and was then in the

middle of the pavement approximately seventy-five (75) to ninety (90) feet away, looking straight ahead in the direction she was going. Defendant assigned as error the charge of the trial court stating the last clear chance doctrine to be that even though the plaintiff was negligent if defendant discovered her peril or by the exercise of ordinary care should have discovered it, and failed to do so, defendant would be liable. It was the contention of defendant that the doctrine of last clear chance did not come into play until defendant actually discovered the peril and thereafter had an opportunity to act. The Court of Appeals rejected limitation of the doctrine to discovered peril relying upon *Harbor et al. v. Wallace, supra.*

In *Vaughn v. City of Alcoa,* 194 Tenn. 449, 251 S.W.2d 304 (1952), plaintiff's declaration alleged several theories of tort liability, one of which was the last clear chance doctrine. The trial judge sustained a demurrer to the declaration. The Supreme Court, Mr. Justice Burnett writing, affirmed; and in treating that portion of the declaration alleging the city's liability under the last clear chance doctrine, commented as follows:

"This doctrine is an arbitrary exception to the law barring recovery for contributory negligence of the plaintiff based upon the theory that the defendant is negligent in not extricating the plaintiff from his place of danger after it is discovered or should have been discovered, notwithstanding the fact that the plaintiff was guilty of contributory negligence in placing himself in danger. Probably the first reported case on the subject, and one that all of us studied in law school is the English case of *Davies v. Mann,* 10 M & W, 546, 549, 152 Reprint 588, 19 ERC 190. This doctrine has been enunciated under a proper state of facts at various times in this State. The doctrine though can have no application in the case now before us

because liability of the City is denied on the ground that the City cannot be held for negligence of its officers in the operation of a governmental function." 194 Tenn. at 456, 251 S.W.2d at 307.

No reported opinion of the Supreme Court has dealt with the doctrine since 1952.

In an excellent article in 41 Tenn.L.Rev. 423 the authors, commenting on Tennessee case law as it existed up to 1970 said:

"The status of the law in Tennessee on last clear chance is impossible to ascertain from the cases. Every conceivable position has some Tennessee authority to support it. There have for some time been two lines of authority as to whether the defendant must have discovered and appreciated the plaintiff's predicament in order for the exception to apply. One line of cases holds that for the exception to apply defendant's knowledge must be proved; another indicates that the exception can exist if the defendant negligently failed to discover a helpless plaintiff. There has been no real cross-recognition between the two lines, and they have existed independently, each not internally contradicted, and each available for possible application by a court as it sees fit. Similarly, there are two lines of authority concerning the propriety of allowing the doctrine to be invoked by a plaintiff who was merely inattentive and unaware of his danger, as distinguished from one who had become helpless and unable to extricate himself.[1] 41 Tenn.L.Rev. at 428.

Since 1970 two significant cases have been authored by Judge Matherne writing for the Western Section of the Court of Appeals, *Gardner's Mason. Contrs., Inc. v. St. Louis-San F. Ry. Co.,* 63 Tenn.App. 288, 470 S.W.2d 945 (1971) and *Smith v. Craig,* 484 S.W.2d 549 (Tenn.App.1972).

In *Gardner* the doctrine of discoverable peril as stated by Mr. Justice Burnett in *Vaughn* is quoted. Thereafter, responding

**1.** The footnote citations accompanying the quote are omitted. All of the cases cited are referred to in this opinion except the following: *Kilgore v. Greyhound Corp.* 30 F.R.D. 385 (E.D. Tenn.1962); *Hemmer v. Tennessee Elec. Power*

*Co.,* 24 Tenn.App. 42, 139 S.W.2d 698 (1940); *Erosion Control Corp. v. Evans,* 58 Tenn.App. 90, 426 S.W.2d 202 (1967); and *Evansville Container Corp. v. McDonald,* 132 F.2d 80 (6th Cir. 1942).

to defendant's contention that the doctrine is not available because the plaintiff was guilty of gross and willful negligence, relying upon *Todd* and other cases, the Court of Appeals said:

"In this connection we deem it important to point out in no case can the plaintiff rely upon the doctrine of last clear chance where the plaintiff's negligence continues and is concurrent with the negligence of the defendant as a causal factor up to the time of the event which causes harm. It matters not whether the plaintiff is guilty of simple negligence or gross negligence, if that negligence is continuing to the event the doctrine cannot be applied as against the defendant. On the other hand we hold it matters not whether the plaintiff's negligence be gross or simple, if that negligence is spent, and does not continue as a causal factor, the doctrine of last clear chance may be asserted against the defendant if it is otherwise applicable." 470 S.W.2d at 948, 949.

We have been unable to find the source authority for determining the applicability of the doctrine in terms of whether plaintiff's negligence is *continuing* or is *spent.* Perhaps it was intended as an explanation of the distinction between an inattentive plaintiff and a helpless plaintiff, with the result that an inattentive plaintiff is denied the use of any last clear chance relief, discoverable or discovered, because of "continuing" negligence.

In *Smith v. Craig, supra,* the Court of Appeals, Western Section, undertakes a rather exhaustive treatment of the doctrines under consideration here. The terminology used by the Court was "discovered peril" and "last clear chance." What is referred to therein as "last clear chance" we have referred to in this opinion as discoverable peril. We have elected, as does the Restatement of the Law of Torts, 2d, and others, to refer to all variations of discovered and discoverable peril as being embraced in the expression, the last clear chance doctrine.

In *Smith,* "last clear chance" or discoverable peril, and discovered peril were explained as follows:

"On the one hand, where the defendant *negligently* fails to see the plaintiff in a position of peril, or *negligently* fails to act so as to avoid injury to the plaintiff after having observed him in that position, the plaintiff's contributory negligence or his remote contributory negligence in so positioning himself must, as in any other lawsuit based upon negligence, be considered and given full force and effect. On the other hand, where it is shown the defendant did see the plaintiff in a position of peril; had ample time, opportunity, and ability to avoid injury; but he continued on in the course of his conduct without taking proper and reasonable precautionary measures available to him, and at all times observing the plaintiff's continuing negligence, did proceed to inflict the injury, the defense of contributory negligence is not available to the defendant. The first situation being that of last clear chance; the latter being that of discovered peril. The determining aspect being that in the latter situation the defendant did observe the plaintiff's continuing negligence which placed the plaintiff in a position of peril, but did *consciously* fail to exercise those precautionary measures available to him to avoid injury to the plaintiff. The defendant's action in this latter situation is not negligence; it is a willful, deliberate, consciously executed act. The distinction is that of negligence, either simple or gross, on the one hand, and a consciously deliberate act on the other. The discovered peril doctrine therefore comes into play under different rules as to the defense of contributory negligence because those acts which justify the application of the doctrine exhibit on the part of the defendant a degree of deliberateness which the law cannot condone by saying the plaintiff was in error by being there in the first place. See and compare: *Kansas City, Memphis and Birmingham Railroad Co. v. Williford* (1905) 115 Tenn. 108, 88 S.W. 178; *Memphis Street Rail-*

*way Co. v. Roe* (1907) 118 Tenn. 601, 102 S.W. 343; *Todd v. Cincinnati, N. O. & T. P. Ry. Co.,* supra; *Hodge v. Hamilton* (1927) 155 Tenn. 403, 293 S.W. 752; *Tennessee Central Railway Co. v. Ledbetter* (1929) 159 Tenn. 404, 19 S.W.2d 258." 484 S.W.2d at 552.

The above quoted discussion was preceded by this comment:

"The distinction between the two doctrines is the availability of proximate, continuing contributory negligence as a complete defense to an action based upon last clear chance; whereas, that defense is not available under the doctrine of discovered peril." 484 S.W.2d at 552.

It is true that *Williford, Roe* and *Todd* provided some support for a statement of the doctrines in the terms employed in *Gardner* and *Smith.*

■ The Court of Appeals found, as a matter of law, that plaintiff was guilty of proximate contributory negligence that "*continued* as a direct and proximate cause of the impact." The case was remanded for a new trial with only the doctrine of discovered peril, as therein defined, available to plaintiff as a jury issue. The rule of discovered peril, as defined in *Gardner* and *Smith,* would require a charge to the jury embracing the distinction between "continuing" and "spent" proximate contributory negligence, and further that discovered peril would not apply unless defendant's negligence could be characterized as a willful, deliberate, consciously executed act. It is time that we relegate to the ash-heap elaborate attempts to supply a lucid rationale for the doctrine and admit that the basic essential is that the defendant be the last wrongdoer with a reasonable opportunity to avoid the harm.

We are of the opinion that the rules so interpreted are completely out of harmony with the last clear chance doctrine as it exists in American jurisprudence today; and as, from time to time, has been defined and applied in Tennessee.

Our research discloses that virtually without exception the courts of this country, that have not adopted some form of comparative negligence, allow the plaintiff to recover where he is unable to extricate himself, and the defendant actually discovers his position in time to avoid the harm. We find no jurisdiction requiring a finding that plaintiff's negligence has been spent, either as a matter of law or as a jury question; nor does any other jurisdiction in this country require for the application of any version of a last clear chance doctrine that the defendant's negligence must rise to the level of a willful, deliberate, consciously executed act.

A majority of jurisdictions also allow recovery by the inattentive plaintiff; that is, where his perilous position is the result of inattention accompanied by the likelihood that his inattention will continue, providing the defendant actually discovers the plaintiff in that position in time to avoid harm. Either a majority or a near majority also allow the plaintiff to recover where he is unable to extricate himself from his perilous position if the defendant could discover by the exercise of reasonable care the perilous situation of the plaintiff in time to act.

■ It is our opinion that the rules governing all aspects of the last clear chance doctrine are best stated in the Restatement of the Law, Torts, 2d, §§ 479, 480. We adopt said sections as the law in Tennessee governing last clear chance and overrule all the cases in conflict with the principles contained therein. The text of said sections are as follows:

§ 479. *Last Clear Chance: Helpless Plaintiff*

A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.

§ 480. *Last Clear Chance: Inattentive Plaintiff*

A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant

(a) knows of the plaintiff's situation, and

(b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.

### IV.

This case came on to trial on December 10, 1973. An amendment to plaintiff's complaint was filed that day, adding the following allegation:

"Plaintiff avers that if it be deemed that the said Doris C. Street was guilty of contributory negligence, which plaintiff denies, then, in such event, plaintiff avers that the defendant, David Calvert, after having discovered the condition of peril of the said Doris C. Street failed to exercise ordinary care and diligence in preventing his automobile from striking the said Doris C. Street, and that the contributory negligence of the said Doris C. Street, if any, is not available to the defendants as a defense under the doctrine of discovered peril, which said doctrine plaintiff hereby in the alternative invokes."

The major thrust of the plaintiff's advocacy was that Mrs. Street was guilty of no negligence, based apparently on the theory that she had reached a place of safety, in front of her mailbox and was only twelve (12) inches from the north edge of the pavement on Hale Road; and that defendant could have easily avoided striking her.

Plaintiff submitted as a special instruction to the jury, the following charge which the trial judge refused to give:

"Members of the jury, if you find from the evidence that the defendant David Calvert saw Mrs. Doris Street in a position of peril and in danger of being struck and injured by the automobile operated by the defendant David Calvert, and if you find that the defendant David Calvert could have avoided the accident, by the exercise of ordinary care, and did not do so, then the plaintiff would be entitled to recover. And I charge you that if you find that the defendant David Calvert failed to exercise ordinary care to avoid striking Mrs. Doris Street, after discovering that she occupied a perilous position, then the contributory negligence of Mrs. Doris Street, if any, is not to be considered in any degree and your verdict must be for the plaintiff."

While the draftsmanship of the charge is subject to serious criticism, in essence it states the doctrine in accord with *Hodge v. Hamilton, supra,* and *Vaughn v. City of Alcoa, supra.* The pleadings, as amended on the first day of the trial reflect a reliance upon the doctrine of discovered peril even though a reading of the entire record reflects little or no advocacy of the doctrine. It is the trial judge's duty to charge the jury accurately with respect to the theories of the parties and the law applicable thereto. See Rule 51, T.R.C.P. and the comment thereto, *Richards v. Parks,* 19 Tenn.App. 615, 93 S.W.2d 639 (1935) and *Tennessee Electric Power Company v. Van Dodson,* 14 Tenn.App. 54 (1931).

Complaint is also made that plaintiff cannot rely upon the doctrine of last clear chance without acknowledging that he is guilty of contributory negligence. In *Smith v. Craig, supra,* it was stated,

". . . that reliance upon either doctrine admits of negligence on the part of the plaintiff. If the plaintiff is not guilty of some degree of negligence in placing himself in the perilous position, neither doctrine would be applicable." 484 S.W.2d at 552.

That observation is correct but it does not follow that plaintiff is precluded from contending in the alternative that he was not guilty of proximate or remote contributory negligence. In most cases it may be poor strategy but this must fall within the realm of plaintiff's options in the management of his own lawsuit. Rule 8.05 T.R.C.P. expressly permits inconsistent pleading.

From the evidence most favorable to the plaintiff, the jury could have found that David Calvert saw Mrs. Street when he was substantially more than ninety (90) feet east of where she was struck; that in fact there was no parked car in front of the Street residence, and she could have been seen for a distance of six hundred (600) feet; that he saw her start from the steps of her own sidewalk, with her right hand over her head for protection from the rain looking directly at the mailbox and unlikely to see him approaching from her right. It is doubtful that plaintiff could be classified as helpless or unable to avoid the accident, but in our opinion the proof makes it a jury question as to whether her situation falls within the category of an inattentive plaintiff recognized by the defendant to be so, and unlikely to extricate herself from the position of peril in which she had placed herself.

Thus, in our opinion there was evidence from which the jury could have found that the defendant knew of the plaintiff's situation, realized or had reason to realize that the plaintiff was inattentive and unlikely to discover her peril in time to avoid the harm; and that the defendant was negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm. This even though the plaintiff was inattentive and by the exercise of reasonable vigilance could have discovered the danger created by the defendant's negligence in time to avoid the harm. In our opinion this case falls within the last clear chance rule as stated in Section 480 of the Restatement.

## V.

The trial judge charged the jury that,

"If the plaintiff's decedent, Mrs. Street, was guilty of negligence which did not directly and proximately contribute to the injuries, damages, and ultimate death, but only remotely contributed to the injuries, damages, and ultimate death of the plaintiff's decedent, then there may be a recovery by the plaintiff, but you must diminish the amount of damages you award the plaintiff, the administrator, by the degree of remote contributory negligence you find Mrs. Street to have been guilty of."

This Court has heretofore held that what is meant by remote contributory negligence should be explained to the jury. *McClard v. Reid*, 190 Tenn. 337, 229 S.W.2d 505 (1950). Our research fails to disclose that this Court has defined remote contributory negligence. We define it as that negligence which is too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident. We suggest that an appropriate charge would state the foregoing definition and add: "If you find the plaintiff guilty of such remote contributory negligence, you must reduce the recovery which you would otherwise award, in proportion to plaintiff's contribution to the injury."

## VI.

In the petition for certiorari filed in this Court, plaintiff assails the doctrine of contributory negligence as obsolete and asks the Court to adopt in its place one of the three doctrines of comparative negligence that have replaced contributory negligence in twenty-seven (27) of our sister states. An amicus curiae brief was filed, with leave of Court, by Dean John Wade, an eminent authority on the law of torts, urging this Court to adopt the pure form of comparative negligence.

We agree with defendants that this Court should not consider a change in the substantive law adopting comparative negligence when that theory was not asserted by plaintiffs in the trial court, and was presented for the first time on appeal before this Court. Tennessee Supreme Court Rules, Rule 14(5); *Sullivan v. Harpeth Dev. Corp.*, 218 Tenn. 107, 401 S.W.2d 195 (1966); *see* 5 Am.Jur.2d, Appeal and Error, § 726; 4 C.J.S. Appeal and Error § 228 *et seq.* We do not deem it appropriate to consider making such a change unless and until a case reaches us wherein the pleadings and proof present an issue of contributory negligence accompanied by advocacy that the ends of justice will be served by adopting the rule of comparative negligence. It is likely that in such a case this Court would have the benefit of amicus curiae briefs representing all interests that would be affected. We are unwilling to change a doctrine of tort law that has been a part of our jurisprudence for over one hundred fifty (150) years that would materially affect thousands of cases in various stages of adjudication where no consideration whatsoever has been given to such change in either the trial court or the intermediate appellate court.

However, in the course of our consideration of this case we have made an exhaustive study of the history of comparative negligence and its status in American jurisprudence today. Historically only five (5) states had adopted any form of comparative negligence prior to 1950. In the late 1960's the all-out assault on the fault system of liability in automobile accident cases was mounted with a number of groups participating on various fronts. Virtually all of the leading law professors and text writers in the field of torts have long advocated comparative negligence. Since 1968, twenty (20) states have adopted comparative negligence in one form or another. However, only three (3) states, Florida,[1] California,[2] and Alaska[3] have made the transition from contributory negligence to comparative negligence without some degree of legislative participation.

We have concluded that in the present posture of this case we cannot properly adopt a rule of comparative negligence. We will not address the propriety of adopting such a rule nor the question of the type of comparative negligence that might be appropriate in Tennessee.

The judgment of the Court of Appeals is reversed and the case is remanded to the Circuit Court of Shelby County for a new trial consistent with this opinion.

COOPER, C. J., and HENRY and HARBISON, JJ., concur.

MATHERNE, Special Justice, not participating.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

The respondents have filed a petition to rehear based on the contention that we have made basic changes in this State's last clear chance and discoverable peril doctrines, and that a retroactive application of these changes to the present case would work a hardship. We deny this petition because we have not changed but rather clarified the last clear chance doctrine as it has always been applied in this State.

As we noted in the opinion, the status of the last clear chance doctrine here has been one of constant confusion. *See,* Wade, Crawford & Ryder, Comparative Fault in Tennessee Tort Actions: Past, Present, Future, 41 Tenn.L.Rev. 423, 428–430. Our adoption of the Restatement of the Law, Torts 2d, §§ 479, 480 merely delineates more clearly our view of the last clear chance doctrine. We simply have restated the doctrine as it "from time to time, has been defined and applied in Tennessee." (Opinion, p. 583); *Vaughn v. City of Alcoa,*

---

1. *Hoffman v. Jones,* 280 So.2d 431 (Fla., 1973).

2. *Li v. Yellow Cab Company of California,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975).

3. *Kaatz v. State,* 540 P.2d 1037 (Alas., 1975).

194 Tenn. 449, 251 S.W.2d 304 (1952); *Hodge v. Hamilton,* 155 Tenn. 403, 293 S.W. 752 (1927); *Todd v. Railroad,* 135 Tenn. 92, 185 S.W. 62 (1915).

The petitioners assert that by our opinion we have overruled the doctrine set forth by the Court of Appeals in *Smith v. Craig,* 484 S.W.2d 549 (Tenn.App.1972) and *Gardner's Mason Contrs. Inc. v. St. Louis-San F. Ry. Co.,* 63 Tenn.App. 288, 470 S.W.2d 945 (1971), which is contrary to the *Restatement* view. The petitioners further contend that our opinion and its "retroactive applicability" has overturned these cases' comprehensive and authoritative treatment of the last clear chance doctrine which has been heavily relied on by courts and attorneys since 1972. This contention is based on the court's denial of certiorari in *Smith* and *Gardner's.*

In *Bryan v. Aetna Life Ins. Co.,* 174 Tenn. 602, 130 S.W.2d 85 (1939), Chief Justice Green writing for the Court stated:

"We have repeatedly pointed out that a mere denial by this court of a writ of *certiorari* to the Court of Appeals does not commit us to all the views expressed in a particular opinion. We are primarily concerned on such application with the result reached." 174 Tenn. at 611, 130 S.W.2d at 88.

See also *Lingner v. Lingner,* 165 Tenn. 525, 529, 56 S.W.2d 749 (1933) and *Powers v. L & N R. Co.,* 183 Tenn. 526, 194 S.W.2d 241 (1946).

The petition to rehear is denied.

COOPER, C. J., and HENRY and HARBISON, JJ., concur.

MATHERNE, Special Justice, not participating.